Douglas E. BROWN; Katherine E. Brown, Plaintiffs–Appellants,

v.

WOODLAND JOINT UNIFIED SCHOOL DISTRICT, Defendant–Appellee,

Woodland Parents Group, Defendant–Intervenor–Appellee.

No. 92–15772.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1993.

Decided June 15, 1994.

Benjamin W. Bull, American Family Ass'n Law Center, Tupelo, MS, for plaintiffs-appellants.

Paul T. Friedman, Morrison & Foerster, San Francisco, CA; Elliot M. Mincberg, People for the American Way, Washington, DC, for defendant-intervenor-appellee.

Bruce J. Sarchet, Littler, Mendelson, Fastiff & Tichy, Sacramento, CA, for defendant-appellee.

Patrick J. Carome, Wilmer, Cutler & Pickering, Washington, DC, counsel for amicus American Ass'n of School Adm'rs, et al.

George D. Ruttinger, Crowell & Moring, Washington, DC, for amicus National Ass'n of Laity, et al.

Before: FERGUSON, THOMPSON, and O'SCANNLAIN, Circuit Judges.

Opinion by Judge O'SCANNLAIN.

O'SCANNLAIN, Circuit Judge:

We must decide whether classroom activities in a California public school district require children to practice the "religion" of witchcraft in violation of the federal Establishment Clause and the California Constitution.

I

Douglas E. Brown and Katherine E. Brown, parents of two students formerly enrolled in the Woodland Joint Unified School District (the "School District"), seek injunctive and declaratory relief under 42 U.S.C.

§ 1983, alleging that the School District had violated their children's rights under the United States and California Constitutions. The Browns and their children are part of the Christian Assembly of God denomination.

The Browns object to the School District's use of portions of *Impressions,* a teaching aid, in the first through sixth grades. *Impressions* is a series of 59 books containing approximately 10,000 literary selections and suggested classroom activities. It implements a "whole language" approach to reading instruction that has the goal of inducing children to read more quickly and with greater enthusiasm through the use of high quality literary selections. Literary selections are followed by suggested learning activities, such as having children compose rhymes and chants, act out the selections, and discuss the selections' characters and themes. The selections reflect a broad range of North American cultures and traditions.

The Browns challenge 32 of the *Impressions* selections (the "Challenged Selections"). They contend that these selections promote the practice of witchcraft, which they assert is a religion called "Wicca." Most of the Challenged Selections ask children to discuss witches or to create poetic chants. Some selections also ask students to pretend that they are witches or sorcerers and ask them to role-play these characters in certain situations.

The Browns have provided evidence indicating that practitioners of the witchcraft religion are known as sorcerers and witches and that spells and charms are sacred rituals of this occult religion. The Browns contend that, because the Challenged Selections resemble witchcraft rituals, the School District's use of the selections violates the federal and state Constitutions.[1] The Browns concede that the author-editors of *Impressions* were unfamiliar with the religion of witchcraft when they developed *Impressions* and that neither the author-editors nor the publisher had any aim of promoting or endorsing any religious practices, including witchcraft, through *Impressions.*

After the School District incorporated *Impressions* into its curriculum,[2] parents in the School District, including the Browns, complained. In response, the School District appointed a review committee, which included a Christian minister, to review *Impressions* for any emphasis on witchcraft or the occult. The committee reported that it did not have evidence or expertise to establish a connection between *Impressions* and occult practices. The School District adopted this report.

The review committee's report did not resolve the controversy. Student petitions and parent newsletters for and against *Impressions* have been circulated, and parent meetings have been held by both supporters and opponents. The Browns contend that the School District's use of *Impressions* became an issue in at least one local political race and that families in other parts of California as well as other states appear to be opposing *Impressions* nationally.

Finally, in January 1991, the Browns brought the instant action. The parties filed cross-motions for summary judgment, which was granted in favor of the School District. The Browns timely appealed.

## II

The Browns assert the School District's use of the Challenged Selections violates the Establishment Clause of the United States Constitution, which provides: "Congress shall make no law respecting an establishment of religion...." U.S. Const. amend. I, cl. 1. The prohibition of the Establishment Clause applies to state governments through the Fourteenth Amendment. U.S. Const.

---

1. Some of the literary selections in *Impressions* include references to diverse religious traditions, including Christianity. These selections are used to inspire a variety of pedagogical activities, including singing poems, envisioning the creation of the world, and determining students' zodiac signs. The Browns do not challenge these selections.

2. Although the School District has argued that the Browns have not demonstrated that the Challenged Selections actually have been used by any particular teacher, the School District has authorized teachers to use any portion of *Impressions* appropriate to the grade level that they teach and has not forbidden teachers from using the Challenged Selections.

amend. XIV; *Everson v. Board of Educ.*, 330 U.S. 1, 8, 67 S.Ct. 504, 507–08, 91 L.Ed. 711 (1947).

■ The School District does not contest the Browns' assertion that witchcraft ("Wicca") is a religion under the California and federal Constitutions, and we will assume, without deciding, that it is a religion for the purpose of this appeal. We thus apply the *Lemon* test to the Browns' claim, which requires a challenged government practice (1) to have a secular purpose, (2) to have a primary effect that neither advances nor inhibits religion, and (3) not to foster excessive state entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111–12, 29 L.Ed.2d 745 (1971); *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1534 (9th Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985).

### A

■ The Browns concede that the author-editors of *Impressions* chose the Challenged Selections for a secular purpose and that the School District adopted *Impressions* for a secular purpose. They also do not assert that any School District teachers are using the Challenged Selections for the purpose of advancing witchcraft. Use of the Challenged Selections thus does not violate the purpose prong of the *Lemon* test.

### B

■ The Browns contend that the use of the Challenged Selections violates the second prong of the *Lemon* test, which bars any government practice that has the "primary" effect of advancing or disapproving of religion, even if that effect is not intended. The concept of a "primary" effect encompasses even nominally "secondary" effects of government action that directly and immediately advance, or disapprove of, religion. *Committee for Public Educ. & Relig. Lib. v. Nyquist*, 413 U.S. 756, 783 n. 39, 93 S.Ct. 2955, 2971, 37 L.Ed.2d 948 (1973). A government practice has the effect of impermissibly advancing or disapproving of religion if it is "sufficiently likely to be perceived by adherents of the controlling denominations as an endorse-

ment, and by the nonadherents as a disapproval, of their individual religious choices." *School Dist. of Grand Rapids v. Ball*, 473 U.S. 373, 390, 105 S.Ct. 3216, 3226, 87 L.Ed.2d 267 (1985). The relevant inquiry thus "is whether the government's action actually conveys a message of endorsement of religion in general or of a particular religion." *Kreisner v. City of San Diego*, 1 F.3d 775, 783 (9th Cir.1993) (internal quotations omitted), *cert. denied*, —— U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 657 (1994).

The parties dispute the standard for judging whether a government action "conveys a message" of endorsement or disapproval of religion. The Browns assert that this inquiry must be made from the subjective perspective of an "impressionable child." The School District counters that the correct perspective is that of a reasonable observer. The district court took a middle ground between these approaches, concluding that "[t]he effect analysis is influenced to some degree by the audience to whom the message is conveyed. However, the extent to which it is influenced is more accurately described by the degree of care undertaken in the analysis not a shift away from the reasonable observer standard." District Court Order at 17.

■ We agree with the district court that the primary effect of a challenged practice generally is considered under the reasonable observer standard. *Kreisner*, 1 F.3d at 784. "This hypothetical observer is informed as well as reasonable; we assume that he or she is familiar with the history of the government practice at issue." *Id.* However, these assumptions are less valid for elementary school children, who are less informed, more impressionable and more subject to peer pressure than average adults. *See Board of Educ. of Westside Comm. Sch. v. Mergens*, 496 U.S. 226, 250, 110 S.Ct. 2356, 2371–72, 110 L.Ed.2d 191 (1990) (plurality portion of opinion); *Edwards v. Aguillard*, 482 U.S. 578, 584, 107 S.Ct. 2573, 2577–78, 96 L.Ed.2d 510 (1987); *Ball*, 473 U.S. 373, 385, 105 S.Ct. 3216, 3223, 87 L.Ed.2d 267 (1985); *Roberts v. Madigan*, 921 F.2d 1047, 1057–58 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992). Courts thus have considered the more vulnerable nature

of school-age children when analyzing the primary effect of state actions in the elementary school environment.[3]

The Browns contend that this perspective demands a *subjective* standard for determining whether a challenged practice appears to children as endorsing or disapproving of a religion. We disagree. Rather than consider what effect a challenged government practice has had on a particular public school student, the Supreme Court and this circuit consistently have applied an objective standard for public school Establishment Clause inquiries. *See, e.g., Lee v. Weisman,* —— U.S. ——, ——, 112 S.Ct. 2649, 2658, 2661, 120 L.Ed.2d 467 (1992); *Roberts,* 921 F.2d at 1057. Use of this standard makes good sense. "People may take offense at all manner of religious as well as nonreligious messages." *Weisman,* —— U.S. at ——, 112 S.Ct. at 2661. If an Establishment Clause violation arose each time a student believed that a school practice either advanced or disapproved of a religion, school curricula would be reduced to the lowest common denominator, permitting each student to become a "curriculum review committee" unto himself or herself. The Supreme Court's opinion in *Employment Division, Department of Human Resources v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), involving a Free Exercise Clause challenge to a law criminalizing the use of peyote, makes clear that this result is improper:

> The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development. To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is compelling-permitting him, by virtue of his beliefs, to become a law unto himself—contradicts both constitutional tradition and common sense.

*Id.* at 885, 110 S.Ct. at 1603 (internal quotations omitted).

■ Thus we will analyze whether an objective observer in the position of an elementary school student would perceive a message of endorsement of witchcraft, or of disapproval of Christianity, in the Challenged Selections.[4]

1

■ The Browns assert that a message of endorsement is communicated because the Challenged Selections engage children in witchcraft rituals and cause them to pretend that they are witchcraft practitioners.[5] The closest case in this circuit to the instant controversy is *Grove v. Mead School District No. 354,* 753 F.2d 1528 (9th Cir.1985). In *Grove,* the plaintiffs alleged that a book entitled *The Learning Tree,* which was part of the defendant school's sophomore curriculum, advanced the religion of secular humanism in violation of the federal Establishment Clause. The court rejected their claim. Observing that the "Supreme Court has stated

---

3. The Supreme Court's decision in *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* —— U.S. ——, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993), is not to the contrary. In that case, the Court held a church's access to school premises after school hours to show a religious oriented film on family values and child-rearing would not violate the federal Establishment Clause. The Court observed that there was "no realistic danger that the community would think that the District was endorsing religion or any particular creed." *Id.* at ——, 113 S.Ct. at 2148. The Court's apparent failure to consider the issue from the perspective of school-age children was appropriate in that case because the church group was on school premises after school hours, when children presumably would be gone.

4. This conclusion is consistent with the Seventh Circuit's recent decision in a similar case involving an Establishment Clause challenge to the *Impressions* series. In *Fleischfresser v. Directors of Sch. Dist. 200,* 15 F.3d 680, 686, 689 n. 9 (7th Cir.1994), the court rejected the "impressionable child" standard and, instead, gave "heightened" scrutiny to any possible religious endorsement by elementary school curricula.

5. Although the School District has argued that the Browns' children could have "opted out" of participation in any of the Challenged Selections, it conceded during oral argument that the opportunity to opt out does not cure any potential constitutional violation. *See Wallace v. Jaffree,* 472 U.S. 38, 60 n. 51, 105 S.Ct. 2479, 2491–92 n. 51, 86 L.Ed.2d 29 (1984).

clearly that literary or historic study of the Bible is *not* prohibited religious activity," the court concluded that the reading of the book was "not a ritual" but a study of the "expectations and orientations of Black Americans." *Id.* at 1534. It further concluded that the book was "included in a group of religiously neutral books in a review of English literature, as a comment on an American subculture." *Id.*

To the extent that the Challenged Selections involve no more than merely reading, discussing or contemplating witches, their behavior, or witchcraft, they fall squarely within the holding of *Grove. See Grove*, 753 F.2d at 1540 (Canby, J. concurring) ("Luther's 'Ninety–Nine Theses' are hardly balanced or objective, yet their pronounced and even vehement bias does not prevent their study in a history class' exploration of the Protestant Reformation, nor is Protestantism itself 'advanced' thereby."). Such selections thus are not reasonably viewed as communicating a message of endorsement. Some of the Challenged Selections, however, involve student participation that is more active than this conduct. These Challenged Selections require children to role-play sorcerers and witches and to cast spells.

*Grove* itself recognizes that active participation in "ritual" poses a greater risk of violating the Establishment Clause than does merely reading, discussing or thinking about religious texts. This view was borne out in *Lee v. Weisman*, —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 where the plaintiff challenged a public school's use of an invited cleric to offer a prayer during its graduation ceremony. Although students had the option of standing silently as the prayer was delivered, the Supreme Court determined that standing silently was not a realistic option because of peer pressure to participate. The Court concluded that the use of an invited cleric to lead a prayer at graduation violated the Establishment Clause, observing that

"[t]he injury caused by the government's action ... is that the State, in a school setting, in effect required participation in a religious exercise.... No holding by this Court suggests that a school can persuade or compel a student to participate in a religious exercise." *Id.* at ——, 112 S.Ct. at 2659–61; *see also Malnak v. Yogi*, 592 F.2d 197 (3d Cir.1979) (student participation in ceremony offering to deities as part of regularly scheduled public school course violated Establishment Clause). *Grove, Weisman,* and *Malnak* indicate that student participation in school-sponsored religious ritual can have the primary effect of endorsing religion.[6]

■ The Browns then argue that the resemblance of the Challenged Selections to the practices of witchcraft causes children reasonably to believe that they are engaging in witchcraft ritual. However, a practice's mere consistency with or coincidental resemblance to a religious practice does not have the primary effect of advancing religion. For example, in *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960), the Supreme Court upheld "blue laws" even though their prohibition of most work on Sunday coincided with the Christian day of rest. In upholding these laws, the Court stated that:

the "Establishment" clause does not ban federal or state regulation of conduct whose reason or effect merely happens to coincide or harmonize with the tenets of some or all religions. In many instances, the Congress or state legislatures conclude that the general welfare of society, wholly apart from any religious considerations, demands such regulation. Thus, for temporal purposes, murder is illegal. And the fact that this agrees with the dictates of the Judaeo–Christian religions while it may disagree with others does not invalidate the regulation. So too with questions

---

**6.** Some student participatory activity involving school-sponsored ritual may be permissible even under *Grove* and *Weisman* where the activity is used for secular pedagogical purposes. For example, having children act out a ceremonial American Indian dance for the purpose of exploring and learning about American Indian culture may be permissible even if the dance was

religious ritual. Similarly, a reenactment of the Last Supper or a Passover dinner might be permissible if presented for historical or cultural purposes. However, because we conclude that the Challenged Selections are *not* religious rituals, we need not determine the conditions under which religious rituals can be employed in a public school curriculum for these purposes.

of adultery and polygamy. The same result could be said of theft, fraud, etc., because those offenses were also proscribed in the Decalogue.

*Id.* at 442, 81 S.Ct. at 1113–14.[7]

Similarly, in *Smith v. Board of School Commissioners of Mobile County,* 827 F.2d 684 (11th Cir.1987), plaintiffs challenged a school's use of textbooks that they characterized as endorsing the religion of secular humanism. The court observed that the textbooks contained ideas that were consistent with the tenets of secular humanism. It nevertheless concluded that the textbooks did not violate the Establishment Clause because "mere consistency with religious tenets is insufficient to constitute unconstitutional advancement of religion." *Id.* at 692.

The Seventh Circuit recently applied this view in an identical challenge to the use of the *Impressions* series. In *Fleischfresser v. Directors of School District 200,* 15 F.3d 680, 689 (7th Cir.1994), the court observed that "it is not enough that certain stories in the series strike the parents as reflecting the religions of Neo–Paganism or Witchcraft, or reference religious holidays. The Establishment Clause is not violated because government action happens to coincide or harmonize with the tenets of some or all religions" (quotation omitted). The court thus upheld a school district's use of *Impressions* as constitutional.

■ We agree with the Seventh Circuit's conclusion. It is not disputed that the author-editors of *Impressions* drew upon the folklore of diverse cultures for the charms, spells, wizards and witches used in the Challenged Selections. *McGowan* and *Smith* indicate that the coincidence or resemblance of the figures and myths of folklore to the practitioners and practices of witchcraft does not cause state use of such folklore to endorse witchcraft or to cause students to believe reasonably that they are participating in religious ritual. The Browns thus cannot

create a genuine issue of material fact simply by virtue of the coincidental resemblance of the Challenged Selections to witchcraft ritual.

2

The fact that the Challenged Selections constitute only a minute part of the *Impressions* curriculum further ensures that an objective observer in the position of an elementary school student would not view them as religious rituals endorsing witchcraft. To determine whether *The Learning Tree* endorsed religion, the court in *Grove* considered the book "in the context of the whole curriculum" and noted that it "was one book ... thematically grouped with others in the sophomore literature curriculum." 753 F.2d at 1540. *Accord Fleischfresser,* 15 F.3d at 689. As in *Grove,* the Challenged Selections are only a very small part of an otherwise clearly nonreligious program. It thus is unlikely that such an objective observer would perceive the inclusion of the selections in *Impressions* as an endorsement of or disapproval of religion.

The Browns assert that the context in which the Challenged Selections appear cannot neutralize their religious content. They argue that context is irrelevant where a person is required to participate in a religious ritual. *See Weisman,* —— U.S. at ——, 112 S.Ct. at 2659. This position is untenable, however, because the Challenged Selections are *not* formal religious rituals; at best, the Browns can prove only that children may perceive them as such. The context in which Challenged Selections exist is relevant to determining whether children will have such a perception.

The Browns further argue that there is no guarantee that the Challenged Selections will appear in the context of nonreligious selections because they are stand-alone activities and because teachers can use any *Impressions* selection in any order that they wish.

7. The Browns seek to distinguish *McGowan* because it was decided as a "purpose" case rather than a "primary effect" case. The text quoted above indicates that this narrow reading of *McGowan* is incorrect. Further, this argument ignores one of *McGowan*'s companion cases,

*Two Guys From Harrison–Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1960), which held that neither a blue law's "purpose *or effect* is religious." *Id.* at 598, 81 S.Ct. at 1143 (italics added).

The Browns, however, have failed to demonstrate any propensity for teachers to pick, out of nearly 10,000 selections, only the 32 Challenged Selections for use in class. Their speculation as to this possibility is insufficient to raise a genuine issue of material fact.

### 3

The Browns assert that use of the Challenged Selections was not necessary to accomplish the School District's pedagogical goals and conclude that the unnecessary use of practices resembling religious ritual endorses religion. However, once the state is free to use a secular means of attaining a goal, it is not required to use an alternative secular means that is less likely to be associated with religion. *Lynch v. Donnelley,* 465 U.S. 668, 681 n. 7, 104 S.Ct. 1355, 1363, 79 L.Ed.2d 604 (1984). As we have established, the Challenged Selections are secular, not sectarian. Consequently, the School District's decision not to use alternative educational tools did not endorse witchcraft.

### 4

The Browns contend that expert testimony offered on how the *Impressions* curriculum will promote witchcraft raises a genuine issue of material fact precluding summary judgment. The district court appears to have concluded that this expert testimony was not relevant to primary effect analysis.

We agree with the district court's treatment of this evidence. Testimony by expert witnesses does not raise a genuine issue of material fact where it is of little use in determining whether a practice is unconstitutional. *See, e.g., Aguillard,* 482 U.S. at 594–96, 107 S.Ct. at 2583–84. The Supreme Court generally has not relied on expert testimony to determine whether a school practice reasonably appears to endorse religion. *See, e.g., Zobrest v. Catalina Foothills Sch. Dist.,* —— U.S. ——, 113 S.Ct. 2462, 125 L.Ed.2d 1 (1993). Instead of engaging in a "battle of the experts" in deciding Establishment Clause cases, *cf. Aguillard,* 482 U.S. at 596, 107 S.Ct. at 2584, courts have relied upon assumptions about a "hypothetical observer" (in this case a hypothetical child) to determine whether a government action conveys

an endorsement of religion. *Kreisner,* 1 F.3d at 784. The expert testimony offered by the Browns has little relevance to this inquiry.

Further, the Browns characterize their proffered expert testimony as demonstrating that the Challenged Selections, through the use of neuro-linguistic programming, gradually and subconsciously will "foster and promote" a magical world view that renders children susceptible to future control by occult groups and more likely to become involved in occult practices later in their lives. Such testimony is irrelevant to the primary effect test, which determines whether a government action will have the primary or "direct and immediate" effect of advancing religion. The claimed long-term propensity for involvement in the occult through neuro-linguistic programming clearly is not such a primary or "direct and immediate" effect.

### 5

The Browns argue that a failure by this panel to find that the Challenged Selections endorse witchcraft would discriminate against Christianity and other popular religions. Their argument rests on their observation that it would "obviously" violate the Establishment Clause if *Impressions* selections were to require children intentionally to perform, for example, a baptism, to take communion or to chant a rosary.

These hypothetical examples are distinguishable from the Challenged Selections. Baptism, communion, and the rosary *are* "overt religious exercises," performed for sectarian purposes. *See Weisman,* —— U.S. at ——, ——, 112 S.Ct. at 2656, 2661. Mimicry of them by public school children thus more likely, though perhaps not necessarily, *see supra* n. 6, would give the appearance of an endorsement of religion. In contrast, the activities in the Challenged Selections are fantasy activities, drawn from a secular source and used for a secular purpose, that happen to resemble religious practices. They are *not* "overt religious exercises" that raise Establishment Clause concerns. Consequently, we do not believe that affirmance of the district court's judgment will lead to

disparate adverse treatment of popular religions.

### 6

Finally, the Browns argue that the School District's use of the Challenged Selections denigrates Christianity and makes Christians feel like outsiders. Their argument relies on their assertion that the alleged witchcraft activities in the Challenged Selections are repugnant to their religious beliefs.

■ For the reasons expressed above, a child's subjective perception that a state action disapproves of or is hostile toward his or her religion is not, by itself, sufficient to establish an Establishment Clause violation. A party must show that an objective observer in the position of an elementary school student would have this view. The purported state hostility toward or disapproval of Christianity consists of the alleged coincidental resemblance of the Challenged Selections to rituals and practitioners of witchcraft. For the same reasons that the use of these selections does not endorse witchcraft, it does not evince hostility toward or otherwise disapprove of Christianity.

The Browns have not persuaded us that the second, "effects," prong of *Lemon* has been violated here.

### C

The third prong of the *Lemon* test prohibits a practice that fosters an excessive entanglement of the state with religion. *Lemon*, 403 U.S. at 612, 91 S.Ct. at 2111. "In order to determine whether the government entanglement with religion is excessive, we must examine the character and purpose of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." *Id.* at 615, 91 S.Ct. at 2112. The Browns assert that *Impressions* fosters excessive entanglement by generating political divisiveness "along religious lines" and requiring undue state surveillance of the purportedly religious-oriented aspects of the curriculum.

### 1

■ "Although political divisiveness has been considered in establishment clause cases, it has never been relied upon as an independent ground for holding a government practice unconstitutional." *Cammack v. Waihee*, 932 F.2d 765, 781 (9th Cir.1991) (internal citations and quotations omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992); L. Tribe, *American Constitutional Law* § 14–11, at 1229–30 (1988). Because the Browns lack any other basis for their Establishment Clause claim, any purported political divisiveness caused by use of the *Impressions* series is insufficient to create an appearance of endorsement or disapproval of religion.

Further, the district court concluded that the political divisiveness doctrine did not apply because the use of the *Impressions* curriculum did not involve a direct financial subsidy by the government to a religious church-sponsored school. We agree with the district court. The political divisiveness doctrine generally is applied only in cases involving direct government subsidies to sectarian institutions. *See* L. Tribe, *American Constitutional Law* § 14–11, at 1229. The doctrine also has been applied recently in cases in which the government intentionally involved itself in overt, fundamental religious exercises or issues. *See, e.g., Weisman,* —— U.S. at ——, 112 S.Ct. at 2655–56 (school's selection of clergy to conduct graduation prayer created significant risk of divisiveness); *see also Feminist Women's Health Center v. Philibosian,* 157 Cal.App.3d 1076, 203 Cal.Rptr. 918, 926 (Cal.App.1984) (city's giving of aborted fetuses to religious groups for mock burial would have aggravated "one of the most emotionally explosive issues in today's firmament"), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985). Unlike those cases, the School District's use of the Challenged Selections is not an intentional effort to aid overtly religious exercises and issues. The district court's decision not to apply political divisiveness doctrine thus was proper.

### 2

■ The Browns argue that the use of the Challenged Selections will involve the

state in excessive administrative surveillance of the School District's curriculum and its teachers to ensure that witchcraft is not endorsed. The Browns claim that the School District's appointment of a curriculum review committee to consider the purported religious content of the *Impressions* curriculum demonstrated an excessive administrative entanglement. This one-time review, which was conducted in response to the complaints of, among others, the Browns, clearly does not cause the School District to become entangled with religion. *Fleischfresser*, 15 F.3d at 689. However, even if the review had entangled the School District with religion at that time, this is irrelevant to whether the School District continues to be entangled with religion. *Kreisner*, 1 F.3d at 789.

The Browns further contend that the School District will have to monitor the implementation of the Challenged Selections in the future. However, since the use of these selections does not endorse or disapprove of religion, no future monitoring of *Impressions* will be necessary.

The Browns have failed to persuade us that any of the three prongs of the *Lemon* test has been breached here. We conclude, therefore, that the School District has not violated the federal Establishment Clause in its use of the *Impressions* series.

### III

■ The Browns also bring pendant claims under the California Constitution. We first consider whether the district court should have abstained under the doctrine of *Texas Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The district court's decision not to abstain is reviewed for abuse of discretion. *Ellis v. City of La Mesa*, 990 F.2d 1518, 1522 (9th Cir.1993).

■ Abstention under *Pullman* is appropriate where (1) the state's constitution contains a provision unlike any in the federal Constitution and (2) state court construction of an unclear provision might make federal ruling unnecessary. *Ellis*, 990 F.2d at 1522. Both of these conditions are present for the Browns' claims under the No Preference

Clause, article XVI, section 5, and article IX, section 8 of the California Constitution. Further, although California's Establishment Clause is nearly identical to the federal Establishment Clause, California courts have indicated that the state version is not limited by interpretations of its federal antecedent. *Sands v. Morongo Unif. Sch. Dist.*, 53 Cal.3d 863, 281 Cal.Rptr. 34, 45, 809 P.2d 809 (Cal. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3026, 120 L.Ed.2d 897 (1992).

Nevertheless, this court recently has interpreted *Pullman* to permit review of claims based upon almost all of these provisions of the California Constitution. *See Ellis*, 990 F.2d 1518. Thus, we must conclude that the district court's decision not to abstain was not an abuse of discretion. *Id.*

### A

■ The Establishment Clause of the California Constitution states that "[t]he Legislature shall make no law respecting the establishment of religion." Cal. Const. art. I, § 4. As under the federal Establishment Clause, the California Establishment Clause generally prohibits public schools from requiring their students to engage in religious ritual. *Sands*, 281 Cal.Rptr. at 38–42, 809 P.2d at 812–18. No California decision suggests, however, that the California Establishment Clause goes beyond its federal counterpart to prohibit school exercises that coincidentally resemble religious rituals. We thus believe that, if confronted with this question, California courts would uphold the use of the Challenged Selections from state constitutional attack.

### B

■ California's No Preference Clause reads: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed." Cal. Const. art. I, § 4. California courts have interpreted the No Preference Clause to require that the government neither prefer one religion over another nor appear to act preferentially. *Sands*, 281 Cal. Rptr. at 45, 809 P.2d at 820.

The Challenged Selections were not created or incorporated into the *Impressions* cur-

riculum for the purpose of preferring or advancing witchcraft. Also, as discussed above, the use of the Challenged Selections will not give the appearance that the School District is endorsing witchcraft. These facts, in addition to the fact that the Challenged Selections are among a wide variety of other cultural selections, indicate that the use of these selections will not evince a preference for witchcraft. *See Okrand v. City of Los Angeles,* 207 Cal.App.3d 566, 254 Cal.Rptr. 913 (1989). There is no violation of the No Preference Clause.

### C

 Article XVI, section 5 of the California Constitution states that "[n]either the Legislature, nor any ... school district, ... shall ever ... pay from any public fund whatever, or grant anything to or in aid of any religious sect, church, creed, or sectarian purpose." Cal. Const. art. XVI, § 5. A two-part test determines whether governmental aid violated this provision: "We consider first whether the aid is direct or indirect, and second whether the nature of the aid is substantial or incidental." *Sands,* 281 Cal.Rptr. at 66, 809 P.2d at 841 (Mosk, J., concurring).

■ *Impressions* was not authored or adopted for the purpose of aiding witchcraft. In addition, the School District's use of *Impressions* does not give the reasonable appearance that the state is endorsing witchcraft. Finally, *Impressions* does not use any actual witchcraft ritual. Any aid to witchcraft through the use of the Challenged Selections thus can be only indirect and incidental. There is no violation of article XVI, section 5.

### D

■ Article IX, section 8 of the California Constitution provides that no "sectarian or denominational doctrine [shall] be taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this State." Cal. Const. art. IX, § 8. The Challenged Selections were chosen for reasons unrelated to the religion of witchcraft, and the use of the Challenged Selections does not appear to endorse religion. The use

of exercises that coincidentally resemble practices of witchcraft therefore does not teach the religion of witchcraft even indirectly. There is no violation of article IX, section 8.

### IV

The Browns do not raise a genuine issue of material fact that a violation of the United States or California Constitutions has occurred. Summary judgment in favor of the School District is therefore

AFFIRMED.