LAWRENCE, Judge.
The minor M.C.L. (ML)[1] and his parents appeal from the terms of an order adjudicating ML delinquent, arguing that the terms— imposing moral and spiritual training, abstention from interviews with representatives of the media, and restitution — are unconstitutional or otherwise unlawful. We consolidated the appeals. We affirm in part, reverse in part, and remand.
ML, in exchange for the State’s agreement to drop three counts of burglary, pleaded guilty to eight counts of burglary and one count of cruelty to animals. ML committed these crimes in Duval County between January 20, 1995 and February 8, 1995. ML’s crime against the animal involved forcefully holding a bag over the head of a small household pet, breathing marijuana smoke into the bag, and then tossing the pet back and forth between juvenile codefendants. ML’s burglaries included destruction of walls, win *1211 dows, and plumbing fixtures in a number of homes, and resulted in $52,085.71 in damages. The above crimes were videotaped by the juveniles themselves. Members of the broadcast media as a result became interested in ML’s case, and invited him to appear on national talk-show television.
The trial judge adjudicated ML delinquent; committed ML to high-risk juvenile detention for a term not to exceed ML’s nineteenth birthday; imposed immediate conditions regarding moral and spiritual training and media interviews; and ordered restitution. We address the four issues raised by the parties.
MORAL AND SPIRITUAL TRAINING
The Florida Constitution
The trial judge imposed the following immediate condition:
(n) The child and mother shall attend an organized moral and spiritual training program (chosen by his mother) for at least 2 hours each week, and he shall spend at least 30 minutes each day in some form of moral and spiritual training, and shall keep a daily journal categorizing what he has read and reflected upon. This shall be available for the counselors or the Court to inspect. During the next 9 months, he shall have covered in this personal spiritual training at least the fives of Moses, Kings David and Solomon of Israel, Jesus of Nazareth, Mohammed, Buddha, Confucius, George Washington, Abraham Lincoln, and Martin Luther King. This daily journal requirement and reading shall begin to be required immediately and shall be required if possible during any commitment program,
(Emphasis added.) ML objects to this condition on state and federal constitutional grounds. (ML’s mother’s objection to the application of this condition to her is treated below.)
The Florida Constitution, article I, section 3, provides:
There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety. No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
(Emphasis added.) The Florida Supreme Court, interpreting this provision, tells us:
A state cannot pass a law to aid one religion or all religions, but state action to promote the general welfare of society, apart from any religious considerations, is valid, even though religious interests may be indirectly benefited. If the primary purpose of the state action is to promote religion, that action is in violation of the First Amendment, but if a statute furthers both secular and religious ends, an examination of the means used is necessary to determine whether the state could reasonably have attained the secular end by means which do not further the promotion of religion.
Johnson v. Presbyterian Homes of Synod of Fla., Inc., 239 So.2d 256, 261 (Fla.1970) (holding constitutional a statute exempting from taxation properties owned by religious organizations, used as homes for the aged and operated not-for-profit). The instant probation condition, by fostering ML’s rehabilitation, promotes the general welfare of society, and promotes public morals, peace and safety.
The Florida Supreme Court moreover, in Southside Estates Baptist Church v. Board of Trustees, 115 So.2d 697 (Fla.1959), interpreting the predecessor provision of the Florida Constitution’s Bill of Rights,[2] holds:
[A] Board of Trustees of a Florida School District has the power to exercise a reasonable discretion to permit the use of school buildings during non-school hours for any legal assembly which includes religious meetings, subject, of course, to judi- *1212 eial review should such discretion be abused to the point that it could be construed as a contribution of public funds in aid of a particular religious group or as the promotion or establishment of a particular religion.
Id. at 700-01 (emphasis added). The instant trial judge, by requiring ML to study historically renowned moral leaders, exercised reasonable discretion to foster ML’s rehabilitation.
ML notwithstanding relies on this court’s holding in L.M. v. State, 587 So.2d 648 (Fla. 1st DCA 1991) (L.M.I). We held there: “Requiring a probationer or community control-lee to submit to a course of religious instruction contravenes the First Amendment.” Id. at 649. ML ignores that we held that even a juvenile’s instruction at a church facility, if parent-directed, is constitutional. L.M. v. State, 610 So.2d 1314, 1319 (Fla. 1st DCA 1992) (L.M.II). The condition imposed in the instant case moreover is distinguishable from that imposed in L.M. I: The instant probation condition merely mandates that ML study renowned moral leaders; the judge has mandated neither enrollment in any church group, nor instruction by any pastor. The instant condition furthermore is modified by the requirement that the training program be “chosen by [ML’s] mother.”
The instant condition therefore is consonant with the Florida Constitution and our holding in L.M. II. We note however that some uncertainty exists as to the meaning of “spiritual,” as opposed to “moral,” training. The State at oral argument conceded, and we agree, that “spiritual” training, to the extent that it means religious training, is unconstitutional. We therefore strike the words “and spiritual” from the judge’s order.
The Federal Constitution
The United States Supreme Court tells us how to evaluate legislation to determine whether the legislation violates the First Amendment of the United States Constitution: The legislation must pass the three-part test of Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (holding unconstitutional state aid to nonpublic schools). The court explains the Lemon test:
Under the Lemon standard, which guides “[t]he general nature of our inquiry in this area,” a court may invalidate a statute only if it is motivated wholly by an impermissible purpose, if its primary effect is the advancement of religion, or if it requires excessive entanglement between church and state.
Bowen v. Kendrick, 487 U.S. 589, 602, 108 S.Ct. 2562, 2570, 101 L.Ed.2d 520 (1988) (citations omitted) (holding constitutional on its face the Adolescent Family Life Act—an act providing grants to religious and other institutions giving counseling on teenage sexuality, without expressly requiring that the funds not be used for religious purposes—but remanding for a determination of the act’s constitutionality as applied).
The instant probation condition, as it applies to ML, passes the three-part Lemon test: It has a valid secular purpose—ML’s rehabilitation; it primarily advances ML’s rehabilitation, not religion; and it leads not at all to entanglement of church and state, for no church is involved. The judge’s order avoids mandating the study of any religious practices; it merely orders the juvenile to study the lives of individuals who have made significant contributions to the code of civilized conduct upon which societies exist. The study of these lives presented as intellectual history neither necessitates the study of religion nor is unconstitutional. Brown v. Woodland Joint Unified School Dist., 27 F.3d 1373 (9th Cir.1994) (holding, applying the Lemon test, that a teaching curriculum which asks children to discuss witches or pretend they are witches or sorcerers, does not require children to practice the “religion” of witchcraft in violation of the federal establishment clause or the California Constitution). We share the Eleventh Circuit’s observation that:
In searching for the proper teaching of an [Emotional Maturity Instruction] course it is probably difficult to locate one who can teach morality without reference to religion, but that is the task which must be accomplished. We recognize that there is a fine line between rehabilitation efforts *1213 which encourage lawful conduct by an appeal to morality and the benefits of moral conduct to the life of the probationer, and efforts which encourage lawfulness through adherence to religious belief.
Owens v. Kelley, 681 F.2d 1362, 1365-66 (11th Cir.1982) (holding that a probation condition requiring a defendant to participate in an oral instruction component of an “Emotional Maturity Instruction” program, which the defendant claims contains religious components, precludes summary judgment on First Amendment issues). The “fine line” that exists between an appeal to morality and adherence to religious belief is observed in the instant case.
The judge’s order, as it relates to ML, thus is consonant with the federal constitution. Bowen; Brown. The condition that ML attend an organized moral training program, chosen by his mother, thus is valid under both the state and federal constitutions. We therefore affirm this condition, as modified by the deletion of the words “and spiritual.”
MEDIA INTERVIEWS
The trial judge also imposed the following immediate condition:
(e) The child shall not participate in any interviews by any member of the media, press, or make any public statements about the crimes committed until one year from this date, and then only upon the condition that the child has successfully completed his program of rehabilitation and demonstrated a maturity to his counselors and this Court that would allow him to speak appropriately about the events of his past criminal activity. Any compensation that he receives for such comments shall go totally toward restitution payments due to the victims.
ML objects to this condition on constitutional grounds.
A special condition of probation is constitutional if it bears a relationship to the crime for which the offender is convicted, relates to conduct which is in itself criminal, or requires or forbids conduct which is reasonably related to future, criminality. See Biller v. State, 618 So.2d 734 (Fla.1993) (holding that a requirement that the defendant not use or possess alcoholic beverages should not have been imposed as a special condition of probation). The Biller court said:
In Rodriguez [v. State, 378 So.2d 7 (1979)] the Second District Court of Appeal noted that constitutional rights of probationers are limited by conditions of probation which are desirable for purposes of rehabilitation. The court stated:
In determining whether a condition of probation is reasonably related to rehabilitation, we believe that a condition is invalid if it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality....
We believe that Rodriguez correctly states the law with respect to special conditions imposed upon individual probationers. While the judge need not make a finding, a special condition of probation, when challenged on grounds of relevancy, will only be upheld if the record supports at least one of the circumstances outlined in Rodriguez.
Biller, 618 So.2d at 734-35 (citation and footnote omitted) (emphasis added). The instant condition of probation passes the Biller test: The record supports the first circumstance outlined in Rodriguez—the condition bears a relationship to ML’s crimes. ML and his fellow delinquents videotaped their escapades obviously intending to live again their crimes on videotape. ML as a result of the videotape was invited to appear on a national television talk show with all of his expenses incurred in connection with the trip paid by the network. . The judge’s order prevents ML from reliving and benefitting from his crime in this way until ML completes rehabilitative training designed to assist him in developing emotional maturity. The record thus supports the connection necessary to affirm this condition, and we do so.
MOTHER’S PARTICIPATION IN COURT-IMPOSED SANCTION
ML’s mother objects that the order under review mandates her participation *1214 with her child in fulfilling a court-imposed sanction, specifically, the child’s moral training. Section 39.054, Florida Statutes (Supp. 1994), however provides:
Powers of disposition.—
[[Image here]]
(5) In carrying out the provisions of this part, the court may order the natural parents or legal custodian or guardian of a child who is found to have committed a delinquent act to participate in family counseling and other professional counseling activities deemed necessary for the rehabilitation of the child or to enhance their ability to provide the child with adequate support, guidance, and supervision. The court may also order that the parent, custodian, or guardian support the child and participate with the child in fulfilling a court-imposed sanction. In addition, the court may use its contempt powers to enforce a court-imposed sanction.
(Emphasis added.) The trial judge thus acted within the dispositional power expressly granted to him by the statute: He ordered that the parent participate with the child in fulfilling a court-imposed sanction. We therefore affirm this condition.
RESTITUTION
The trial judge imposed restitution upon ML’s parents as well as upon ML, totalling more than $52,000. The parents object.
This court holds that where a hearing on the matter of restitution is held after defendant’s notice of appeal is filed, the order imposing restitution is without effect, despite that the judge reserved jurisdiction to consider restitution. Nguyen v. State, 655 So.2d 1249 (Fla. 1st DCA 1995). The court entered eight written restitution orders on November 20, 1995. A notice of appeal was filed on September 19, 1995. The restitution orders thus are without effect. Nguyen.
We moreover held in C.M. v. State, 676 So.2d 498 (Fla. 1st DCA 1996), that, under amendments to section 39.054, Florida Statutes, effective October 1, 1994, restitution cannot be imposed on parents; restitution can be imposed on the delinquent child through a promissory note cosigned by the delinquent’s parent if a parent “fails to establish that he or she ‘has made diligent and good faith efforts to prevent the child from engaging in delinquent acts.’” C.M., 676 So.2d at 499.
ML’s crimes occurred between January 20, 1995 and February 8, 1995; the amendment discussed in C.M. thus applies to ML’s case, and requires that, on remand, each parent be permitted an opportunity to establish that he or she “has made diligent and good faith efforts to prevent the child from engaging in delinquent acts.” § 39.054(l)(f), Fla.Stat. (Supp.1994); C.M.
The restitution orders thus must be reversed and remanded for proceedings consistent with C.M. and Nguyen. The judge on remand again may impose restitution. Nguyen, 655 So.2d at 1249-50 (“Because the notice of appeal had been filed before the restitution hearing was held, the hearing and order entered thereafter are without effect. However, on remand, the trial court may conduct another hearing, and again impose restitution, should it elect to do so.”) (citation omitted).
We accordingly affirm in part, reverse in part, and remand for consistent proceedings.
MICKLE, J., concurs.
ALLEN, J., concurs in result only.

. ML was bom on November 12, 1979.

. “No preference shall be given by law to any church, sect or mode of worship and no money shall ever be taken from the public treasury directly or indirectly in aid of any church, sect or religious denomination or in aid of any sectarian institution.” Id. at 699.