GRIFFIN, J.
B.M., a child, and W.M. and C.M., parents of B.M., appeal a restitution order in the amount of $135,523.62. Case numbers 98-1883 and 98-2437 have been consolidated for purposes of appeal.
On November 3, 1997, B.M. and four other minor co-defendants, T.F., T.K., M.K., and D.V., broke into the home of the victim, Lucian Smith, stealing several items of personal property, including a firearm, and vandalizing the contents of the home, believing it to be abandoned by a drug dealer. B.M. and his co-defendants attempted to “hot-wire” a Porsche in the adjacent garage, causing a fire which destroyed the vehicle, garage, and a significant portion of the home.
The State filed a petition for delinquency charging B.M. with burglary of a dwelling and second degree arson. After B.M. pled no contest, the court withheld adjudication and ordered community control. The court then conducted a single restitution hearing, with each child’s parents and all but one of the co-defendants present.
At the hearing, the victim testified that the total loss sustained to the garage, home, and its contents amounted to $135,-523.62. He based his testimony upon a loss estimate prepared by Charles W. Tut-weiler & Associates, Inc., licensed public adjusters, whom he had hired to assist in the filing of a claim with his property insurer. Mr. Smith testified that, although he assisted the adjusters in identifying the losses, he was unaware of the actual procedure utilized by the adjusters to prepare the proposal and to account for depreciation or fair market and replacement values. After Smith’s testimony and argument of counsel, the court sua sponte ordered the loss proposal into evidence without objection and accepted the victim’s estimate of loss as the amount of restitution.
After testimony from B.M. and his parents regarding their ability to pay restitution, the court ordered B.M. jointly and severally liable with his co-defendants for $71,921.00 in restitution and B.M.’s parents jointly and severally with the other parents for the remaining $63,603.62. The court reserved jurisdiction on the amount of payments.
On August 11, 1998, the court entered a written restitution order. The order, however, reversed the amounts owed by the children with the parents, ordering B.M. responsible for $63,602.62, and B.M.’s parents jointly and severally liable for $71,-921.00. Additionally, the written order provided that “in the event, however, that either party shall fail to make payment for *507 this amount, the child shall be liable for the full amount.”
On appeal, B.M. contends that the trial court erroneously ordered restitution, claiming that the State offered insufficient evidence of the amount of the victim’s loss. Specifically, B.M. argues that the loss proposal relied upon by the trial court constituted inadmissible hearsay. Neither B.M., nor his co-defendants, however, objected below on hearsay grounds. Moreover, B.M.’s counsel and counsel for the co-defendants cross-examined the victim at length about the loss figures derived from the proposal. The only objection lodged below was that the victim did not establish the fair market value of his loss. This court has recently held that B.M.’s co-defendant, T.F., cannot complain of the identical issue on appeal for lack of preservation in the trial court. T.F. v. State, 734 So.2d 601, 1999 WL 445717 (Fla. 5th DCA 1999). See also Tillman v. State, 471 So.2d 32, 35 (Fla.1985); J.C. v. State, 722 So.2d 982, 983 (Fla. 5th DCA 1999). If the loss proposal were objectionable on hearsay grounds, equivalent competent evidence was likely available to establish the amount of the loss had the objection been made.
B.M., unlike his co-defendant, T.F., relies on the supreme court’s holding in State v. T.M.B., 716 So.2d 269 (Fla.1998), for the proposition that the contemporaneous objection rule does not apply to this case. This court, however, has recognized that restitution hearings, unlike typical sentencing hearings, are adversarial proceedings in which counsel has the opportunity to cross-examine and lodge appropriate objections, and accordingly, defendants should not be entitled to complain of errors for the first time on appeal. Mitchell v. State, 664 So.2d 1099 (Fla. 5th DCA 1995). In Mitchell, this court expressly rejected the argument that State v. Rhoden, 448 So.2d 1013 (Fla.1984), applied to restitution cases, finding that the right to appeal the inclusion of an item of restitution requires a contemporaneous objection:
That reasoning [Rhoden ] would not apply in the instant case. Mitchell was represented by counsel at the restitution hearing, and the victim testified and was cross-examined by defense counsel. The court’s decision was announced at the hearing. Due process was fully afforded to Mitchell and he should not have the privilege of complaining for the first time on appeal. The restitution ordered is in the nature of a civil judgment, and, had the amount been determined in a civil trial without objection, a civil litigant would have no remedy on appeal. There is no reason to give a criminal defendant more rights regarding restitution than a civil litigant. (Footnote omitted).
Mitchell, 664 So.2d at 1100. Recently, the fourth district, in J.S. v. State, 717 So.2d 175 (Fla. 4th DCA 1998), held that a finding of no preservation of error in a juvenile restitution proceeding is not in conflict with the supreme court’s holding in T.M.B. that the Criminal Reform Act does not apply in juvenile cases.
B.M. next contends that the trial court abused its discretion in finding that he had the ability to pay the amount of restitution in light of the fact that at the time of the restitution hearing he was a seventeen year old senior in high school expecting to attend Daytona Beach Community College to study business administration, hoping to own a surf shop some day in the future, and immediately planning to obtain part-time employment paying approximately $6.00 an hour for about twenty hours a week. The trial court concluded below that B.M. had the ability to pay the restitution:
COURT: All right. Well, listening to the testimony, it’s obvious that all of these kids, except for [M.K.], have the present ability to obtain and maintain employment ... Obviously they’re all in good health, physically and mentally, and there’s no reason that they can’t do neighborhood jobs, even if there weren’t *508 a decision made to maintain regular employment.
Also, that they all have significant positive plans for the future that are going to put them in positions to earn good livings and to make restitution.
sis * *
In regards to [T.F.] and in regards to [T.K.] and in regards to [B.M.], I find that the children have the ability to make restitution in the amount of $71,-921, and the parents will pay the remainder.
Section 985.231(l)(a)l.a., Florida Statutes (1997), provides in pertinent part that a court that has jurisdiction of an adjudicated delinquent child may order restitution, but “the amount of restitution may not exceed an amount the child and the parent or guardian could reasonably be expected to pay or make.” On the other hand, when a child is placed on community control section 985.231(l)(a)6. applies and provides in pertinent part that:
6. As a part of the community control program to be implemented by the Department of Juvenile Justice, or, in the case of a committed child, as part of the community-based sanctions ordered by the court at the disposition hearing or before the child’s release from commitment, order the child to make restitution in money, through a promissory note cosigned by the child’s parent or guardian, or in kind for any damage or loss caused by the child’s offense in a reasonable amount or manner to be determined by the court. (Emphasis added).
This court has recently affirmed the trial court’s ruling that B.M.’s co-defendant, T.F., a seventeen-year-old high school graduate planning to attend Seminole Community College to get an electrician’s license and looking for part-time work, has the ability to pay restitution. T.F. v. State, 734 So.2d 601 (Fla.1999)(“The evidence shows the appellants have the ability, each of them, to make the money to pay the damages over time”).[1] We find no error.
B.M.’s final contention that the trial court’s written restitution order failed to comport with the court’s oral ruling has merit. At the restitution hearing, the court ordered B.M., T.F., and T.K. jointly and severally liable for $71,921.00 in restitution, and the parents of the co-defendants liable for the remaining $63,602.62 of the total restitution award of $135,523.62. The written restitution order, however, reversed the amounts owed by the children with the parents, ordering the children responsible for $63,602.62, and the parents joint and severally liable for $71,921.00. Additionally, the written order provided that “in the event, however, that either party shall fail to make payment for this amount, the child shall be liable for the full amount.” Despite the State’s assertions to the contrary, the transcript reveals that such a ruling was not expressed by the trial court. These errors require correction.
B.M.’s parents contend for the first time on appeal that the restitution order should be reversed since they were not afforded reasonable notice and an opportunity to be heard. The parents concede that they received notice of the restitution hearing but complain that they were not informed that liability could be imposed upon them as a result of B.M.’s acts.
Section 985.231(l)(a)l.a., Florida Statutes (1997), governing the trial court’s powers of disposition in juvenile cases, provides in pertinent part that a court that has jurisdiction of an adjudicated delinquent child may order restitution, but “the amount of restitution may not exceed an amount the child and the parent or guardian could reasonably be expected to pay or *509 make.” Further, section 985.231(l)(a)9., provides the court authority to order parents directly to pay restitution:
In addition to the sanctions imposed on the child, order the parent or guardian of the child to perform community service if the court finds that the parent or guardian did not make a diligent and good faith effort to prevent the child from engaging in delinquent acts. The court may also order the parent or guardian to make restitution in money or in kind for any damage or loss caused by the child’s offense. The court shall determine a reasonable amount or manner of restitution, and payment shall be made to the clerk of the circuit court as provided in subparagraph 6.
The State argues that B.M.’s parents had constructive notice of their liability. State v. Beasley, 580 So.2d 139 (Fla.1991). We note that section 985.219, Florida Statutes (1997), entitled “Process and Service,” requires that both the parents and the child shall be served with process.
The question of notice is, to our minds, bound up with the question of what issues the parents were entitled to contest and how they were entitled to contest them. At the restitution hearing, B.M.’s counsel informed the court that in order to impose restitution on B.M.’s parents, the court was required to find willful failure on the part of the parents to prevent B.M.’s delinquent conduct. The court commented that it was unsure whether such a finding was necessary under amendments to section 985.231(l)(a)6., Florida Statutes (1997), ultimately ruling that the willful failure to prevent the misconduct may be a prerequisite to requiring the parents to sign a promissory note guaranteeing the child’s restitution but it did not apply to restitution from the parents directly.
The parents filed a motion for relief from the restitution order claiming that the court’s interpretation of section 985.231 was mistaken, and that the parents were not afforded an opportunity to show they had made diligent good faith efforts to prevent the child’s criminal episode. The motion also requested the court to take “mandatory judicial notice” of section 985.231(l)(a)6. and 9., Florida Statutes (1997) and M.C.L. v. State, 682 So.2d 1209 (Fla. 1st DCA 1996). The trial court denied the motion finding that M.C.L. “did not apply” to the “new statute” and that “the other grounds of interpretation” of the statute had been previously ruled upon.,
In M.C.L., the first district held that under the predecessor statute to section 985.231(l)(a)6., Florida Statutes (1997), section 39.054(l)(f), Florida Statutes (1995), restitution could not be imposed on parents. M.C.L., 682 So.2d at 1214. The first district held, however, that under the predecessor statute at issue restitution can be imposed on the child through a promissory note cosigned by the delinquent’s parent if the parent “fails to establish that he or she ‘has made diligent and good faith efforts to prevent the child from engaging in delinquent acts.’ ” Id. In other words, the court found that section 39.054(l)(f) addressed only restitution directly ordered from the child.
Section 39.054(l)(f) provides:
(f) As part of the community control program to be implemented by the Department of Juvenile Justice, or, in the case of a committed child, as part of the community-based sanctions ordered by the court at the disposition hearing or before the child’s release from commitment, order the child to make restitution in money, through a promissory note cosigned by the child’s parent or guardian, or in kind for any damage or loss caused by the child’s offense in a reasonable amount or manner to be determined by the court. The clerk of the circuit court shall be the receiving and dispensing agent. In such case, the court shall order the child or the child’s parent or guardian to pay to the office of the clerk of the circuit court an amount not to exceed the actual cost incurred by the clerk as a result of receiving and *510 dispensing restitution payments. ' A finding by the court, after a hearing, that the parent or guardian has made-diligent and good faith efforts to prevent the child from engaging in delinquent acts absolves the parent or guardian of liability for restitution under this paragraph. (Emphasis added).
The current statute, section 985.231(l)(a)6., Florida Statutes (1997), provides as follows:
6. As part of the community control program to be implemented by the Department of Juvenile Justice, or, in the case of a committed child, as part of the community-based sanctions ordered by the court at the disposition hearing or before the child’s release from commitment, order the child to make restitution in money, through a promissory note cosigned by the child’s parent or guardian, or in kind for any damage or loss caused by the child’s offense in a reasonable amount or manner to be determined by the court. The clerk of the circuit court shall be the receiving and dispensing agent. In such case, the court shall order the child or the child’s parent or guardian to pay to the office of the clerk of the circuit court an amount not to exceed the actual cost incurred by the clerk as a result of receiving and dispensing restitution payments. The clerk shall notify the court if restitution is not made, and the court shall take any further action that is necessary against the child or the child’s parent or guardian. A finding by the court, after a hearing, that the parent or guardian has made diligent and good faith efforts to prevent the child from engaging in delinquent acts absolves the parent or guardian of liability for restitution under this subparagraph. (Emphasis added).
The 1996 amendment to section 39.054(l)(f); section 985.231(l)(a)6 ., merely adds a provision that the clerk may take further action against the child or the parent if the child’s restitution is not paid.
Both the current and predecessor sections provide that if the trial court finds that the parents have exercised good faith efforts to prevent the delinquent acts of the child, then the parents may be absolved of the liability of co-signing a promissory note with the child guaranteeing the child’s payment of restitution.
The legislature made a significant change to the disposition statute with the 1996 amendment adding section 985.231(l)(a)9., Florida Statutes (1997). Unlike sections 39.054(l)(f) and 985.231(l)(a)6., in section 985.231(l)(a)9., the legislature authorizes the trial court to order restitution to be directly imposed on the delinquent’s parents. The recent amendment provides:
9. In addition to the sanctions imposed on the child, order the parent or guardian of the child to perform community service if the court finds that the parent or guardian did not make a diligent and good faith effort to prevent the child from engaging in delinquent acts. The court may also order the parent or guardian to make restitution in money or in kind for any damage or loss caused by the child’s offense. The court shall determine a reasonable amount or manner of restitution, and payment shall be made to the clerk of the circuit court as provided in subparagraph 6. (Emphasis added).
Prior to the amendment, the predecessor statute, section 39.054(l)(i), Florida Statutes (1995), read as follows:
(i) In addition to the sanctions imposed on the child, order the parent or guardian of the child to perform community service if the court finds that the parent or guardian did not make a diligent and good faith effort to prevent the child from engaging in delinquent acts. (Emphasis added).
By adding the following language to section 39.054(1)®, the legislature established the court’s authority to make parents personally and directly liable for restitution *511 resulting from the delinquent acts of their children:
The court may also order the parent or guardian to make restitution in money or in kind for any damage or loss caused by the child’s offense. The court shall determine a reasonable amount or manner of restitution, and payment shall be made to the clerk of the circuit court as provided in subparagraph 6. (Emphasis added).
The parents in the instant case, however, argue that the new amendment, like section 985.231(l)(a)6. and section 39.054(l)(f) before it, requires the court to make an affirmative finding of the lack of good faith diligent efforts on behalf of the parents to curb their child’s delinquent acts before liability for restitution attaches.
This ambiguity arises because there is no corresponding provision in the second sentence of section 985.231(l)(a)9. that provides absolution for liability as in the first sentence. Under the first sentence the court may waive the imposition of community service if it finds that the parents made a good faith diligent effort to keep their child from committing delinquent acts. Under the State’s theory, the second sentence authorizing restitution provides that the trial court may impose restitution as an alternative to community service but without any good-faith, diligent effort absolution.
There- are several problems with the state’s position. First, instead of creating a new paragraph when amending section 39.054(l)(i), the legislature instead added the following language to the existing paragraph (i) to create section 985.231(l)(a)9.:
The court may also order the parent or guardian to make restitution in money or in kind for any damage or loss caused by the child’s offense.
The word “also” used in the same sentence suggests that the court may also, after a finding of lack of good faith diligent effort, additionally or alternatively award restitution:
The court may also order the parent or guardian to make restitution in money ... (Emphasis added).
As usual, legislative history is so inconsistent as to be of limited use. On the one hand, there is considerable legislative history suggesting the legislature intended restitution to be imposed only if the trial court finds that the parents failed to make good faith diligent efforts to prevent the delinquent acts of their child. House Bill 1369 (1997), which amended section 39.054 to create section 985.231, contains the following in the preamble:
A bill to be entitled ... An act relating to juvenile justice; ... amending s. 39.054, F.S.; deleting a requirement that monetary restitution required from a juvenile be secured by a promissory note from the juvenile’s parent or guardian; authorizing the court to take further action if restitution is not made; authorizing the court to order the juvenile’s parent or guardian to make restitution if the parent or guardian failed to make diligent and good-faith effort to prevent the juvenile from engaging in delinquent acts ... (Emphasis added).
The House of Representatives Committee on Juvenile Justice Bill Research & Economic Impact Statement on HB 1369 dated April 4, 1997, which provides a staff analysis of proposed litigation, reads in pertinent part:
I. SUMMARY

* * *

The bill allows the juvenile court to take further action if restitution is not paid by a child or parent. Also, the bill allows the court to order restitution from a parent or guardian lacking “good faith” in preventing a child’s delinquent acts ...
* * *
II. SUBSTANTIVE RESEARCH:
A. PRESENT SITUATION
*512 [[Image here]]
RESTITUTION
Currently, under the powers of disposition, the court may require the parent of a youth adjudicated delinquent to pay restitution under s. 39.054, F.S. This section allows the court to impose an order of restitution and require the parent to cosign a promissory note for the restitution owed by the child. No provision exists to require the parent to pay restitution, however the parent may be required to pay the actual cost incurred by the clerk for processing the child’s restitution payments.
[[Image here]]
B. EFFECT OF PROPOSED CHANGES:
RESTITUTION
The bill allows the court to take any further action necessary against the parent or guardian if payment of restitution is not rendered. In addition, it allows the court to impose fees upon a parent who lacks good faith in preventing a child from committing delinquent acts. The restitution against the parent or guardian for damage or loss caused by the child’s delinquent act, as ordered by the court, may be in the form of money or in kind. Restitution is payable to the clerk of the circuit court.
When HB 1369 was ultimately adopted as Chapter 97-285, Laws of Florida, however, the preamble did not refer to the authority of the court to impose restitution on parents that do not put forth good faith efforts to deter their children from delinquent acts. Instead, the preamble provided:
An act relating to juvenile justice;
* * *
creating s. 985.231, F.S.; providing powers of disposition in delinquency cases; providing for court-ordered payment of certain fees by parent or guardian ...; providing for enforcement through contempt powers ...
Thus, it is unclear whether the legislature decided to abandon its earlier objective to make parents liable for restitution if the parents failed to exercise a good faith diligent effort to prevent the delinquent acts of their child or whether they simply decided to abbreviate the statute’s description. Given that the provision to require parents to cosign a promissory note and the provision to require parents to perform community service both contain the good-faith effort absolution provision, it makes no sense that restitution have no good-faith absolution. The amendment to section 39.054(l)(i) is the same as proposed in HB 1369. Therefore, it appears that, in order to impose restitution, the legislature intended that a trial court must find a parent has failed to exercise good faith efforts.
The next question becomes how and when the good-faith issue is to be heard and determined. The statute offers no suggestion for a procedural framework. Nor is it clear whether the parent is entitled to representation. It even could be that the legislature contemplated the order imposing restitution would be entered, but then the parents could request a hearing to present their good faith argument and receive “absolution” in the form of an order withdrawing the restitution. We will, however, leave these issues for - another day. These parents are entitled to a hearing to determine their diligent and good faith efforts to prevent B.M. from committing delinquent acts. We accordingly vacate the restitution order as to the parents and remand for a hearing.
AFFIRMED in part; REVERSED in part; and REMANDED.
GOSHORN, J., and McNEAL, R. T„ Associate Judge, concur.

. B.M.’s parents, like B.M., contend that the trial court abused its discretion in finding that they have the ability to pay the ordered amount of restitution in the instant case. We find no error. T.F., 734 So.2d 601.