255 F.3d 734 (9th Cir. 2001)
 RONALD ZIMMERMAN; STEFFI ZIMMERMAN; JIM HINES; JIM HINES FOUNDATION, A NON-PROFIT CALIFORNIA CORPORATION, PLAINTIFFS-APPELLANTS
v.
CITY OF OAKLAND; COUNCIL OF OAKLAND; OAKLAND POLICE DEPARTMENT; LEONARD WHITE, SERGEANT; JANE BRUNNER, INDIVIDUALLY AND AS A MEMBER OF THE OAKLAND CITY COUNCIL; JOHN A. RUSSO, INDIVIDUALLY AND AS A MEMBER OF THE OAKLAND CITY COUNCIL; NANCY J. NADEL, INDIVIDUALLY AND AS A MEMBER OF THE OAKLAND CITY COUNCIL; DICK OPINION SPEES, INDIVIDUALLY AND AS A MEMBER OF THE OAKLAND CITY COUNCIL; IGNACIO DE LA FUENTE, INDIVIDUALLY AND AS A MEMBER OF THE OAKLAND CITY COUNCIL; NATE MILEY, INDIVIDUALLY AND AS A MEMBER OF THE OAKLAND CITY COUNCIL; LARRY REID, INDIVIDUALLY AND AS A MEMBER OF THE OAKLAND CITY COUNCIL; HENRY CHANG, JR., INDIVIDUALLY AND AS A MEMBER OF THE OAKLAND CITY COUNCIL, DEFENDANTS-APPELLEES.
 No. 99-16828
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 15, 2001--San Francisco, California
Filed June 21, 2001
 
 [Copyrighted Material Omitted]
 Thomas E. Ho'okano, Esq., Law Offices of Thomas E. Ho'okano, San Francisco, California, for the plaintiffs-appellants.
 Claudia Leed, Office of the City Attorney, Oakland, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California Claudia Wilken, District Judge, Presiding D.C. No. CV-98-03245-CW
 Before: Alfred T. Goodwin, Procter Hug, Jr., and William A. Fletcher, Circuit Judges.
 
 
 1
 The opinion of the court was delivered by: W. Fletcher, Circuit Judge
 
 William A. Fletcher
 OPINION
 
 2
 Ronald Zimmerman, Steffi Zimmerman, Jim Hines, and the Jim Hines Foundation (collectively, "Plaintiffs") appeal the dismissal of their complaint against the City of Oakland and various individuals employed by the city (collectively, "Defendants"). We reverse in part, affirm in part, and remand.
 
 I.
 
 3
 According to the complaint, the Zimmermans own property in Oakland that is zoned for light industrial use. The dispute in this case revolves around a reconditioned transit bus stored on that property for the use of the Jim Hines Foundation, a non-profit organization whose office is also located on the property. On March 27, 1998, Sergeant Leonard White and other Oakland police officers entered the property to search for derelict vehicles. The officers tagged several vehicles, including the bus, and mailed the Zimmermans a notice stating that the city considered the vehicles public nuisances and would seize them in ten days.
 
 
 4
 Following instructions provided in the notice, Mr. Zimmerman requested a pre-seizure hearing, which was scheduled to occur at the Zimmerman property on April 23, 1998. On that date, Sergeant White arrived and announced that he would be the hearing officer. Plaintiffs contend that instead of conducting a hearing, White began a warrantless search of the property and summarily directed that several vehicles (including the bus) be towed and scrapped. In their somewhat prolix complaint, Plaintiffs allege, among other things, that "[w]ithout taking any testimony . . . making any factual determinations . . . and without making any findings . . . Sergeant White ordered the bus seized. [The] seizure was not supported by findings as required by law and was totally devoid of substantial evidence to support it." White "never stated the reasons why the vehicles were being seized or how the condition he found objectionable could be cured. He made no findings . . . ." In so doing, White "utterly failed to perform the duties given to him under state and local law." Further,"Plaintiff [sic] believes that the actions taken were retaliatory in nature and constitute selective and discriminatory illegal enforcement of the ordinances complained of herein."
 
 
 5
 Plaintiffs brought suit in federal court under 42 U.S.C. §§ 1983. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. The district court granted the motion and dismissed the complaint.
 
 
 6
 Plaintiffs make three arguments on appeal. First, they contend that Defendants violated the Due Process Clause of the Fourteenth Amendment by seizing the bus in the manner in which they did. Second, they contend that both of the entries onto the property violated the Fourth Amendment. Finally, they contend that the district court improperly denied their motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e).
 
 
 7
 We review dismissals under Rule 12(b)(6) de novo , accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most favorable to the plaintiffs. See Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000). Dismissal for failure to state a claim is appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). We review denials of Rule 59(e) motions for abuse of discretion. See Pasatiempo by Pasatiempo v. Aizawa, 103 F.3d 796, 801 (9th Cir. 1996).
 
 II.
 
 8
 Plaintiffs first contend that the seizure of their bus violated the Due Process Clause of the Fourteenth Amendment. They contend that their right to due process was violated because the notice they received from the police department and the hearing conducted by Sergeant White were inadequate. They further contend their due process rights were violated because the ordinance under which the hearing was conducted was unsupported or preempted by state law, and did not apply to the bus.
 
 
 9
 Defendants argued in the district court, and argue here, that there is no constitutional due process violation because the state has provided adequate post-deprivation remedies under state law for the seizure of the bus. Relying on Parratt v. Taylor, 451 U.S. 527 (1981), and Hudson v. Palmer, 468 U.S. 517 (1984), the district court agreed, finding that postdeprivation remedies available under state and city law were constitutionally adequate, and holding that there was therefore no violation of due process.
 
 
 10
 The district court was correct to rely on Parratt and Hudson for the proposition that, in certain circumstances, a state can cure what would otherwise be an unconstitutional deprivation of "life, liberty or property" by providing adequate post-deprivation remedies. The question, however, is what those circumstances are. The facts of Parratt and Hudson, the Court's explanation in Hudson, and the Court's later holding and explanation in Zinermon v. Burch, 494 U.S. 113 (1990), assist us in reaching an answer.
 
 
 11
 The plaintiff in Parratt was a state prisoner. He claimed that he had ordered hobby materials through the mail and that prison officials negligently lost those materials. He brought a constitutional due process suit for damages against prison officials under §§ 1983 for the value of the materials. See 451 U.S. at 529. In Hudson, the plaintiff was also a state prisoner. He brought a suit for damages under §§ 1983 against a correctional officer, claiming that the officer violated his due process rights by intentionally destroying personal property in his prison cell. See 468 U.S. at 530. The Supreme Court held that neither prisoner had been deprived of due process because in both cases the state had made available adequate postdeprivation remedies under state law.
 
 
 12
 In Hudson, the Court expanded the holding of Parratt, which concerned negligent deprivations of property, to include intentional deprivations:
 
 
 13
 The underlying rationale of Parratt is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the "practicability" of affording predeprivation process is concerned.
 
 
 14
 Id. at 533. But the Court made it clear that the holdings in both cases were restricted to cases in which the state prison officials acted in random, unpredictable, and unauthorized ways. The Court stated explicitly that post-deprivation remedies could not save an otherwise unconstitutional act from unconstitutionality in cases in which the state officer acted pursuant to some established procedure. It distinguished Parratt and Hudson from Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), in which it had allowed a constitutional due process challenge to be brought against a state-law procedure even though some post-deprivation remedies were available under state law. According to the Court in Hudson, the critical distinction was that the plaintiff in Logan, unlike the plaintiffs in Parratt and Hudson, challenged the adequacy of a procedure that had been followed:
 
 
 15
 In Logan, we decided a question about which our decision in Parratt left little doubt, that is, whether a post-deprivation state remedy satisfies due process where the property deprivation is effected pursuant to an established state procedure. We held that it does not. Logan plainly has no relevance here. Respondent does not even allege that the asserted destruction of his property occurred pursuant to a state procedure.
 
 
 16
 468 U.S. at 534.
 
 
 17
 Zinermon v. Burch further clarifies the reach of Hudson and Parratt. The plaintiff in Zinermon alleged that he was confined against his will in a Florida state mental hospital. He contended that the manner in which the state employees admitted him to the hospital, and thereby deprived him of his liberty, violated both state law and federal due process. Relying on Parratt and Hudson, the state defendants contended that plaintiff's complaint failed to state a claim for violation of due process because "it alleged only a random, unauthorized violation of the Florida statutes governing admission of mental patients." 494 U.S. at 115.
 
 
 18
 The Court in Zinermon rejected the analogy to Parratt and Hudson for three reasons. First, the deprivation of liberty in Zinermon was not unpredictable in the same way the deprivations of property in Parratt and Hudson had been. Unlike Parratt and Hudson, where the state could not " `predict precisely when the loss [would] occur,' " id. at 136 (quoting Parratt, 451 U.S. at 541), deprivations like the one that took place in Zinermon "w[ould] occur, if at all, at a specific, predictable point in the . . . process"--that is, at the time mental patients were admitted for treatment. Id. Second, in Parratt and Hudson, the "very nature of the deprivation made predeprivation process `impossible,' " id . at 137 (quoting Parratt, 451 U.S. at 541), for it would have been "absurd, " or nearly so, "to suggest that the State [should] hold a hearing" to determine whether a prison official should engage in the conduct charged by the plaintiff. Id. Third, the conduct of the defendants in Zinermon was not "unauthorized " in the same sense as the conduct of the defendants in Parratt and Hudson. In Parratt and Hudson, the defendants lacked "broad authority to deprive prisoners of their personal property. " Id. at 138. In Zinermon, by contrast, Florida had "delegated to [the defendants] the power and authority to effect the very deprivation complained of [and] the concomitant duty to initiate the procedural safeguards set up by state law to guard against [the] unlawful [deprivation]." Id.
 
 
 19
 We believe that our case is governed by Zinermon, rather than Parratt and Hudson. First, the deprivation in this case took place at a "specific, predictable point in the process" -when Sergeant White came out to the Zimmermans' property and conducted the hearing about which Plaintiffs complain. Second, it is not "absurd" in this case to suggest that Oakland should hold a hearing to determine whether Plaintiffs should be deprived of their property. Indeed, the Oakland ordinance under which Sergeant White acted prescribes precisely such a hearing. Third, Sergeant White, like the defendants in Zinermon, was "delegated . . . the power and authority to effect the very deprivation complained of" and had "the concomitant duty to initiate the procedural safeguards set up [under the Oakland ordinance] to guard against [the] unlawful [deprivation]." We therefore conclude that Parratt and Hudson do not protect the"hearing" conducted by Sergeant White from constitutional challenge.
 
 
 20
 Our holding in this case is consistent with Conner v. City of Santa Ana, 897 F.2d 1487 (9th Cir. 1990), in which we heard a due process challenge to a procedure under which, as here, city officials removed nuisance automobiles from private property. The parties did not argue in Conner that Parratt and Hudson required a different result, and we did not discuss those cases in our opinion. However, the implicit answer we gave in Conner is the same as the explicit answer we give today: Parratt and Hudson did not foreclose a due process challenge to the adequacy of the procedures under which the removal was carried out.
 
 
 21
 Because the district court relied on Parratt and Hudson to hold that the availability of adequate post-deprivation remedies under state law foreclosed any federal constitutional due process claim, it did not reach the question of whether Defendants' actions, considered without regard to post-deprivation remedies, violated due process. But if, as we hold, Parratt and Hudson are not applicable to this case, that question must be reached. We therefore remand to the district court to determine whether the procedures followed by Defendants in this case violated the Due Process Clause of the Fourteenth Amendment. We intimate no answer to that question in this opinion.
 
 III.
 
 22
 Plaintiffs next contend that the Oakland police violated their Fourth Amendment rights by searching the Zimmerman lot on March 27 and April 23, 1998. We hold that Plaintiffs had no legitimate expectation of privacy in the area where the bus was stored. According to Plaintiffs' own complaint, the area where the bus was parked was open to people who wished to transact business with tenants of the lot. Since those tenants included automotive repair shops and pay parking areas, the Zimmermans routinely allowed people unknown to them to visit the area without prior authorization, and they did nothing to prevent those people from seeing the bus.
 
 
 23
 When a police officer enters a commercial area in the same manner as any member of the public, and examines the area in the same way as might be expected of any other person, the officer has not conducted a "search" within the meaning of the Fourth Amendment. See Katz v. United States, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."); Maisano v. Welcher, 940 F.2d 499, 503 (9th Cir. 1991). Because the police officers in this case entered the Zimmermans' lot in the same manner as a person who had business to transact, we hold that Plaintiffs' expectation of privacy was insufficient to support a Fourth Amendment claim. Our decision in Conner is inapposite because that case involved an enclosed residential lot, not a commercial space open to the public.
 
 IV.
 
 24
 Finally, Plaintiffs contend that the district court improperly denied their motion under Federal Rule of Civil Procedure 59(e) to alter or amend its judgment. To the extent that the motion sought to alter or amend the judgment with respect to Plaintiffs' due process claim, the appeal from the district court's denial is moot in light of our holding that Plaintiffs are entitled to proceed with that claim. To the extent, however, that the motion sought to alter or amend the judgment with respect to Plaintiffs' other claims, the appeal is not moot.
 
 
 25
 Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law. School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). With respect to the portion of its ruling that is not moot, the district court did not abuse its discretion in denying Plaintiffs' motion to alter or amend its judgment. With one exception, the motion repeated legal arguments made earlier and sought to introduce facts that were available earlier in the proceedings. A district court does not abuse its discretion when it disregards legal arguments made for the first time on a motion to amend, see Rosenfeld v. U.S. Dep't of Justice, 57 F.3d 803, 811 (9th Cir. 1995), and a party that fails to introduce facts in a motion or opposition cannot introduce them later in a motion to amend by claiming that they constitute "newly discovered evidence" unless they were previously unavailable. See Gencorp, Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999).
 
 
 26
 The only new argument in Plaintiffs' motion to alter or amend the judgment was a contention that it was"manifestly unjust" for the district court to issue a ruling without first obtaining and reviewing the city's administrative record. Plaintiffs claim that this evidence (in particular, a videotape of the April 23 hearing) would have demonstrated that the property was not the "open lot" that the district court described, but was instead restricted to people with business to transact. This fact would not, however, alter Plaintiffs' expectation of privacy. Accordingly, it was not an abuse of discretion for the district court to deny Plaintiffs' Rule 59(e) motion.
 
 CONCLUSION
 
 27
 Because we believe that Plaintiffs' complaint that Defendants violated their Fourteenth Amendment due process rights states a claim under §§ 1983, we REVERSE the judgment of the district court AND REMAND for further proceedings on that issue. We otherwise AFFIRM the judgment of the district court. Apportionment of costs is deferred until final judgment.
 
 
 28
 REVERSED in part, AFFIRMED in part, and REMANDED.