**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ERNESTO R. VASQUEZ,
           *Plaintiff-Appellant,*

v.

LOS ANGELES ("LA") COUNTY; DON
KNABE, in his official capacity as a
Supervisor, LA County; GLORIA
MOLINA, in her official capacity as
a Supervisor, LA County; YVONNE
B. BURKE, in her official capacity
as a Supervisor, LA County; ZEV
YAROSLAVSKY, in his official
capacity as a Supervisor, LA
County; and MICHAEL D.
ANTONOVICH, in his official
capacity as a Supervisor, LA
County,
           *Defendants-Appellees.*

No. 04-56973

D.C. No.
CV-04-04010-SJO

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
October 17, 2006—Pasadena, California

Filed May 15, 2007

Before: Harry Pregerson, Ronald M. Gould, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

## COUNSEL

Robert J. Muise (argued), Edward L. White III, Thomas More Law Center, Ann Arbor, Michigan, for the appellant.

Raymond G. Fortner, Jr., County Counsel; Gary N. Miller, Assistant County Counsel; Jennifer A. D. Lehman (argued), Deputy County Counsel, Office of the County Counsel, Los Angeles, California, for the appellees.

John C. Eastman and Manuel S. Klausner, Orange, California, for amici curiae the Claremont Institute Center for Constitutional Jurisprudence and the Individual Rights Foundation, Los Angeles, California.

---

## OPINION

CLIFTON, Circuit Judge:

Plaintiff-Appellant Ernesto R. Vasquez appeals the district court's dismissal of his 42 U.S.C. § 1983 action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Vasquez alleges that Defendants, the County of Los Angeles ("LA County") and the members of the LA County Board of Supervisors, violated the Establishment Clause of the First Amendment by removing the image of a cross from the county's official seal. Specifically, Vasquez alleges that Defendants' removal of the cross from the seal conveyed a state-sponsored message of hostility toward Christians. Because we conclude that Defendants did not violate the Establishment Clause, we affirm the district court's order dismissing Vasquez's complaint with prejudice.

## I. BACKGROUND

According to Vasquez's briefs and the record, the version

of the LA County Seal that included the image of the cross was first adopted on January 2, 1957, and contained "symbols of historical and cultural significance."[1] In addition to the cross, which represented the "influence of the church and the missions of California," the seal also depicted the Roman Goddess Pomona,[2] engineering instruments, the Spanish galleon San Salvador, a tuna, a cow, the Hollywood Bowl, two stars (representing the county's motion picture and television industries), and oil derricks. A black and white image of the 1957 seal is attached as Appendix A to this opinion.

In 2004, Defendants revised the seal. First, Defendants removed the cross from the seal and substituted the image of Mission San Gabriel, the first mission established in the county.[3] Second, Defendants replaced the image of Pomona with that of a Native American woman holding a basket. Third, Defendants deleted the image of the oil derricks altogether. A black and white image of the 2004 seal is attached as Appendix B to this opinion.

According to Defendants, their decision to remove the cross from the seal was motivated by a desire to "avoid a potential Establishment Clause violation . . . and [to] affirm [the county's] neutrality." Plaintiff Vasquez contends, however, that Defendants' decision to remove the cross was motivated by their disapproval of, and hostility towards, the Christian religion. He further alleges that Defendants' decision to remove the cross was improperly influenced by the

---

[1]A prior version of the seal, in effect from 1887 to 1957, featured a single image: a cluster of grapes nestled in leaves. *See* http://lacounty.info/grapeseal.pdf (last visited Mar. 6, 2007).

[2]According to Defendants' official website, Pomona is the "goddess of gardens and fruit trees," and her presence on the seal represented the role of agriculture in the county.

[3]Vasquez disputes Defendants' characterization of the substitute symbol as a Christian mission. We address this argument in footnote 7 of this opinion.

American Civil Liberties Union, which had threatened to sue Defendants over the presence of the cross on the seal as an impermissible preference for Christianity.

Vasquez is a resident and employee of LA County, and he identifies himself as a "devout Christian." On June 4, 2004, Vasquez filed this action against LA County and the members of the LA County Board of Supervisors, seeking relief under the Establishment Clause of the First Amendment, as applied to the states through the Fourteenth Amendment. Defendants promptly filed a Rule 12(b)(6) motion to dismiss Vasquez's complaint for failure to state a claim for which relief can be granted. Before the district court ruled on Defendants' motion, Vasquez filed a First Amended Complaint. In the amended complaint, Vasquez alleged that Defendants' act in "singling out the cross for removal from the LA County Seal" conveyed a state-sponsored message of hostility towards Christians and sent a clear message to Christians that they were outsiders, not full members of the political community. Vasquez claimed that he was injured by Defendants' conduct because he had "daily contact" with the revised seal and was forced to "alter his behavior to avoid this direct injury." For relief, Vasquez requested that the district court: (1) enjoin Defendants' removal of the cross from the seal; (2) issue a declaratory judgment holding Defendants' removal of the cross from the seal to be unconstitutional; and (3) uphold the constitutionality of the 1957 version of the seal containing the cross. Defendants responded with a second Rule 12(b)(6) motion.

The district court granted Defendants' motion and dismissed Vasquez's complaint without leave to amend on October 19, 2004. According to the district court, Vasquez's complaint failed to state a claim for which relief can be granted because: (1) Vasquez did not have standing to bring the Establishment Clause challenge; (2) Defendants' substitution of the cross with the mission rendered Vasquez's Estab-

lishment Clause challenge moot; and (3) the substance of Vasquez's Establishment Clause challenge lacked merit.

Vasquez timely appealed the district court's order of dismissal.

## II.  DISCUSSION

We review *de novo* the district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6). *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). In reviewing such a motion, we accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party. We have consistently emphasized, however, that "conclusory allegations of law and unwarranted inferences" will not defeat an otherwise proper motion to dismiss. *See Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 820 (9th Cir. 2002) (internal citation and quotation marks omitted). Dismissal for failure to state a claim is appropriate only "if it appears beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Zimmerman*, 255 F.3d at 737 (internal citation and quotation marks omitted).

### A.  Standing

We begin our review with the district court's holding that Vasquez lacked standing to bring this Establishment Clause challenge. Standing is a question of law and we review *de novo*. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). A party has standing if: (1) he suffers an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision. *Buono v. Norton*, 371 F.3d 543, 546 (9th Cir. 2004); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Vasquez asserts two bases for standing. First, he claims he was forced to have daily contact with the revised seal, presumably because he was a resident and employee of LA County. The injury resulting from such contact, Vasquez argues, is sufficiently "concrete and particularized" to confer Article III standing.[4] *See Lujan*, 504 U.S. at 560; *Bernhardt*, 279 F.3d at 868-69. Alternatively, Vasquez asserts standing as a county taxpayer. We hold that Vasquez has standing because he has alleged a legally cognizable injury arising out of his frequent regular contact with the revised county seal. Consequently, we do not reach the merits of Vasquez's taxpayer standing argument.

**[1]** Whether frequent regular contact with an allegedly offensive religious symbol — or, in this case, an allegedly offensive *anti*-religious symbol — can give rise to a legally cognizable injury is an open question in this circuit. In prior cases, we have held plaintiffs' affirmative avoidance of areas where such symbols are located to be sufficient to confer standing. For example, in *Buono v. Norton*, 371 F.3d 543 (9th Cir. 2004), a plaintiff who "regularly visited" the Mojave National Preserve sought to obtain an injunction for the removal of a cross located upon a tract of federally owned land in the Preserve. *Id.* at 544, 546. He claimed that he had standing because he was "deeply offended" by the public display of the cross on government property and, as a result, tended to avoid the area where the cross was located. *See id.* at 546-47. We held that defendant's allegedly unconstitutional conduct had impaired plaintiff's ability to "freely" and "unreservedly use public land," and that this impairment constituted an injury in fact sufficient to confer Article III standing. *See id.* at 547-48; *see also Separation of Church & State*

---

[4]Although Vasquez also claimed to have affirmatively "alter[ed] his behavior" to avoid contact with the revised seal, the district court disregarded this conclusory allegation for lack of specificity. Because we conclude that Vasquez would have had standing even in the absence of any altered behavior, we do not address the finding of the district court.

*Comm. v. City of Eugene*, 93 F.3d 617, 619 n.2 (9th Cir. 1996) (plaintiffs established injury in fact when "they alleged that the cross [on public land] prevented them from freely using" the public park at issue); *Ellis v. City of La Mesa*, 990 F.2d 1518, 1523 (9th Cir. 1993), *cert. denied sub nom.*, *San Diego County v. Murphy*, 512 U.S. 122 (1994) (plaintiffs established injury in fact when they alleged they were not "able to freely use the public areas" due to the presence of a cross on public land); *Kreisner v. City of San Diego*, 1 F.3d 775, 778 n.1 (9th Cir. 1993), *cert. denied*, 510 U.S. 1044 (1994) (accord); *Hewitt v. Joyner*, 940 F.2d 1561, 1564-65 (9th Cir. 1991) (accord). In none of our cases, however, have we held affirmative avoidance to be a necessary component of Article III's standing requirement, and we decline to do so today.

It is useful to understand the purpose of the standing doctrine and, in particular, the element of the doctrine that requires a plaintiff to personally suffer some actual or threatened harm as a result of defendant's putatively illegal conduct. *See Heckler v. Mathews*, 465 U.S. 728, 738 (1984). At its core, the standing doctrine is aimed at "improv[ing] judicial decision-making by ensuring that there is a specific controversy before the court and that there is an advocate with a sufficient personal concern to effectively litigate the matter." ERWIN CHEMERINSKY, FEDERAL JURISDICTION 58 (4th ed. 2003). As the Supreme Court emphasized in *Baker v. Carr*, 369 U.S. 186 (1962), the "gist of the question of standing" is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Id.* at 204; *see also Scott v. Rosenberg*, 702 F.2d 1263, 1267 (9th Cir. 1983).

**[2]** The concept of a "concrete" injury is particularly elusive in the Establishment Clause context. *See Suhre v. Haywood County*, 131 F.3d 1083, 1085 (4th Cir. 1997) (citing

*Murray v. City of Austin*, 947 F.2d 147, 151 (5th Cir. 1991)). This is because the Establishment Clause is primarily aimed at protecting non-economic interests of a spiritual, as opposed to a physical or pecuniary, nature. *Suhre*, 131 F.3d at 1086 (noting that "the spiritual, value-laden beliefs of the plaintiffs are often most directly affected by an alleged establishment of religion") (citing *ACLU v. Rabun County*, 698 F.2d 1098, 1102 (11th Cir. 1983)) (internal quotation marks omitted). As the Fourth Circuit noted in *Suhre*, the injury that gives standing to plaintiffs in the Establishment Clause context is the injury "caused by unwelcome direct contact with a religious display that appears to be endorsed by the state." *Id.*

The Supreme Court recognized the spiritual interests embodied in the Establishment Clause in *School District of Abington v. Schempp*, 374 U.S. 203 (1963). In that case, public school students and their parents challenged the school district's practice of opening each day with Bible reading and voluntary prayer. The Supreme Court held that those plaintiffs had standing to sue, even though the students did not quit school in response to the defendant's religious activities. According to the Court, plaintiffs had standing because they were "directly affected by the laws and practices against which their complaints [were] directed," *id.* at 224 n.9, and therefore, had "*a spiritual stake* in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause." *Ass'n. of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154 (1970) (interpreting *Schempp*, 374 U.S. 203 (1963)) (emphasis added); *see also Suhre*, 131 F.3d at 1086 (accord).

**[3]** In certain cases, a plaintiff's contact with an allegedly offensive religious or anti-religious symbol will remain too tenuous, indirect, or abstract to give rise to Article III standing. This is necessarily so, lest this court be converted into "a vehicle for the vindication of the value interests of concerned bystanders," *United States v. SCRAP*, 412 U.S. 669, 687 (1973), or worse yet, a "judicial version[ ] of college debating

forums." *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982). We do not believe, however, that this is such a case. Vasquez has alleged more than "a mere abstract objection" to Defendants' removal of the cross from the county seal. *See Suhre*, 131 F.3d at 1086. To the contrary, he has held himself out as a member of the community where the seal is located, as someone forced into frequent regular contact with the seal, and perhaps most importantly, as someone "directly affected" by his "unwelcome direct contact" with the seal. If we assume for the moment that the revised seal did, in fact, convey an anti-Christian message, then it is understandable that Vasquez would feel aggrieved by that message. He should, accordingly, be able to seek a legal remedy. *See Schempp*, 374 U.S. at 224 n.9 (holding that plaintiffs had standing because they were "directly affected by the laws and practices against which their complaints [were] directed"); *Suhre*, 131 F.3d at 1087 ("Plaintiffs who 'are part of the community where challenged religious symbolism is located and are directly affronted by the presence of this symbolism' certainly 'have more than an abstract interest in seeing that the government observes the Constitution.' ") (quoting *Saladin v. City of Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987)) (internal alterations omitted). In short, Vasquez has alleged a sufficiently concrete injury arising out of his direct contact with the purportedly offensive anti-religious symbol at issue in this case.

Defendants suggest that a standing rule that does not always require plaintiffs to show affirmative avoidance of the allegedly offensive religious (or anti-religious) symbol would be in tension with the Supreme Court's decision in *Valley Forge*. In that case, a nonprofit organization headquartered in Washington, D.C. and four of the organization's employees challenged a conveyance of land from the government to a religious institution in Pennsylvania, upon learning of the conveyance through a press release. The Court held that those plaintiffs lacked standing to sue:

> [Plaintiffs] complain of a transfer of property located in Chester County, Pa. The named plaintiffs reside in Maryland and Virginia; their organizational headquarters are located in Washington, D.C. They learned of the transfer through a news release. Their claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court.

*Valley Forge*, 454 U.S. at 486-87.

We view *Valley Forge* to be distinguishable from this case. Unlike plaintiffs in *Valley Forge*, who were physically removed from defendant's conduct, Vasquez is a member of the community where the allegedly offending symbol was located, and his contact with the symbol was frequent and regular, not sporadic and remote. In fact, if we accept all of Vasquez's material factual allegations to be true, which we do at this stage, we must also accept the factual premise that the offending symbol "will be displayed on county buildings, vehicles, flags, stationary, forms, commendations, uniforms, and elsewhere through LA County," thereby forcing Vasquez into unwelcome "daily contact and exposure" of the most pervasive kind. These facts and allegations make Vasquez's status fundamentally different from that of plaintiffs in *Valley Forge*. *See Suhre*, 131 F.3d at 1087 (noting that "where there is a personal connection between the plaintiff and the challenged display in his or her home community, standing is more likely to lie").

In addition, we note that a standing rule requiring plaintiffs to show affirmative avoidance would impose too onerous a burden upon those seeking to challenge governmental action under the Establishment Clause. Such a requirement would effectively force individuals to quit their jobs or forgo school attendance, solely for the purpose of obtaining standing to sue. *See id.* at 1089. As the Fourth Circuit pointed out in

*Suhre*, an avoidance requirement for standing would "[b]ring[ ] . . . Establishment Clause plaintiffs to the verge of civil disobedience [and] would go beyond what any court has heretofore decreed." *Id.* at 1088-89. We agree with the Fourth Circuit and, likewise, decline to impose such a heavy burden upon those seeking to vindicate their spiritual rights against allegedly unconstitutional governmental conduct under the Establishment Clause.

We note that the majority of other circuits that have considered the issue have held spiritual harm resulting from one's direct contact with an offensive religious (or anti-religious) symbol to be a sufficient basis to confer Article III standing. *See Suhre*, 131 F.3d at 1088 (noting that a majority of circuits have held "that neither Supreme Court precedent nor Article III imposes . . . a change-in-behavior requirement"). For example, in *Suhre*, a county resident sued Haywood County, North Carolina, seeking removal of a Ten Commandments display from the county courtroom. Plaintiff alleged he was "offended" and "filled with revulsion" every time he came into contact with the display, which was often because he was a "contentious character" who had prosecuted no less than five civil suits against his neighbors and had twice been convicted for misdemeanor telephone harassment. *Id.* at 1085. Plaintiff, however, was unable to allege that the display caused him to alter his behavior in any way. *Id.* The Fourth Circuit nevertheless held him to have standing, and in so doing, rejected the notion that legally cognizable injury could arise only when a plaintiff alters his behavior or curtails his activities in response to an offensive religious symbol. *See id.* at 1085, 1088.

Other circuits are in accord. In *Saladin v. City of Milledgeville*, 812 F.2d 687 (11th Cir. 1987), the Eleventh Circuit concluded that city residents' forced "direct contact with the offensive [city seal]" constituted an injury in fact sufficient to confer Article III standing. *Id.* at 692-93. In *Foremaster v. City of St. George*, 882 F.2d 1485 (10th Cir. 1989), *cert.*

*denied*, 495 U.S. 910 (1990), the Tenth Circuit considered the claim of an individual who lived outside the city but had "frequent and close connection" within, and held that his "allegations of direct, personal contact [with the offending city logo] suffice[d] as non-economic injury" and gave rise to standing. *Id.* at 1490-91. In *Murray v. City of Austin*, 947 F.2d 147 (5th Cir. 1991), *cert. denied*, 505 U.S. 1219 (1992), the Fifth Circuit held that a resident had standing to challenge the city seal because he "live[d] and work[ed] in [the City], receiv[ed] many items of correspondence from the City, . . . [and] personally confront[ed] the insignia in many locations around the City." *Id.* at 150. Finally, in *Kaplan v. City of Burlington*, 891 F.2d 1024 (2d Cir. 1989), *cert. denied*, 496 U.S. 926 (1990), the Second Circuit presumed that city residents had standing to sue after they claimed to "have been exposed to the menorah in the course of their daily activities." *Id.* at 1027.[5]

**[4]** We join the majority of the circuits and hold that, in the Establishment Clause context, spiritual harm resulting from unwelcome direct contact with an allegedly offensive religious (or anti-religious) symbol is a legally cognizable injury and suffices to confer Article III standing. Accordingly, we conclude that Vasquez's Establishment Clause claim should not have been dismissed for lack of standing.

*B. Mootness*

To qualify for adjudication in a federal court, a live controversy must exist at all stages of the litigation, not simply at

---

[5]*But see Freedom From Religion Found. v. Zielke*, 845 F.2d 1463 (7th Cir. 1988). In that case, the Seventh Circuit held that a city resident *did not* have standing to challenge the presence of a Ten Commandments display in a city park because she failed to allege behavioral modification resulting from the presence of that display. *Id.* at 1467. To the extent that the Seventh Circuit views affirmative avoidance or behavioral modification as an indispensable component of Article III's injury in fact requirement, we reject that court's approach.

the time plaintiff filed the complaint.[6] *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *In re Di Giorgio*, 134 F.3d 971, 974 (9th Cir. 1998). We review *de novo* the district court's mootness determination. *Di Giorgio*, 134 F.3d at 974.

The district court dismissed Vasquez's complaint as moot after it determined that in revising the seal, Defendants simply replaced one Christian symbol (the cross) with another (the mission). According to the district court, it is unclear how Defendants' decision to "adopt a new seal displaying an image of a Christian church could possibly be viewed as hostile to Christianity." Vasquez vigorously disputes the district court's characterization of the substitute symbol as "Christian."[7]

---

[6]In *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980), the Supreme Court defined the mootness doctrine as a "doctrine of standing in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* at 397 (quoting Henry Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1384 (1973)) (internal quotation marks omitted).

A case may be rendered moot by a number of different events:

> For example, a case is moot if a criminal defendant dies during the appeals process or if a civil plaintiff dies where the cause of action does not survive death. Also, if the parties settle the matter, a live controversy obviously no longer exists. If a challenged law is repealed or expires, the case is moot. Essentially, any change in the facts that ends the controversy renders the case moot.

ERWIN CHEMERINSKY, FEDERAL JURISDICTION 125-26 (4th ed. 2003) (internal citations omitted).

[7]Specifically, Vasquez challenges the district court's characterization of the substitute symbol as a "Christian" church or mission, noting the absence of a cross and arguing that there is nothing else to identify the depicted structure as "Christian." The county, on its website, describes the substitute symbol as Mission San Gabriel, which, as a matter of history, was a Christian mission. We recognize, however, that few observers of the revised seal are likely to search the county website for the mission's official description. In any event, we do not believe it is necessary for us to address the question of how the substitute symbol would likely be per-

**[5]** The district court confused the doctrine of mootness with a determination of Vasquez's claim on the merits. The central issue in any Establishment Clause case is whether a governmental act impermissibly endorsed or disapproved of religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). Here, the district court concluded — before applying *Lemon* and "as a simple matter of fact" — that Defendants' act in replacing the cross could not "possibly be viewed as hostile to Christianity." This is a determination not of mootness, but rather of the substance of Vasquez's Establishment Clause claim.

**[6]** Had Defendants restored the old seal or inserted a cross of comparable size and style into the revised seal, the current action might have been rendered moot. Adding the image of the mission did not terminate the controversy, however, because Vasquez contends that the revised seal, including the mission, conveys a message of hostility to the Christian religion. That claim is not moot, and the district court's holding to the contrary was in error.

## C.   *The Establishment Clause*

Having determined that Vasquez has standing to bring this claim and that the claim is not moot, we move to address the substance of Vasquez's Establishment Clause challenge. Whether there has been an Establishment Clause violation is a question of law, and we review *de novo*. *Buono v. Norton*, 371 F.3d 543, 548 (9th Cir. 2004).

**[7]** Notwithstanding its "checkered career," *Lemon v. Kurtzman*, 403 U.S. 602 (1971), continues to set forth the

---

ceived in order to resolve this appeal. In our consideration of Vasquez's Establishment Clause challenge, set forth below, we accept Vasquez's contention and do not assume that a "reasonable observer" of the revised seal containing the mission would make the connection to Christianity inferred by the district court.

applicable constitutional standard for assessing the validity of governmental actions challenged under the Establishment Clause. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 319 (2000) (Rehnquist, C.J., dissenting) (noting the *Lemon* test's "checkered career in the decisional law of [the Supreme Court]"); *Am. Family Ass'n., Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1121 (9th Cir. 2002), *cert. denied*, 537 U.S. 886 (2002) (applying *Lemon*). In fact, the Supreme Court recently reaffirmed the viability of the *Lemon* test in *McCreary County v. ACLU*, 545 U.S. 844, 859 (2005) (applying the first prong of *Lemon* to invalidate defendants' public display of the Ten Commandments). Under *Lemon*, a government act is consistent with the Establishment Clause if it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor disapproves of religion; and (3) does not foster excessive governmental entanglement with religion. *See Lemon*, 403 U.S. at 612-13; *Brown v. Woodland Joint Unified Sch. Dist.*, 27 F.3d 1373, 1378 (9th Cir. 1994). Although *Lemon* is most frequently invoked in cases involving alleged governmental preferences to religion, the test also "accommodates the analysis of a claim brought under a hostility to religion theory." *Am. Family Ass'n.*, 277 F.3d at 1121; *see also Vernon v. City of Los Angeles*, 27 F.3d 1385, 1396 (9th Cir. 1994), *cert. denied*, 513 U.S. 1000 (1994) ("The government neutrality required under the Establishment Clause is . . . violated as much by government disapproval of religion as it is by government approval of religion.").

Vasquez's appeal comes before us on a Rule 12(b)(6) motion to dismiss. We are not, however, precluded from considering the merits of Vasquez's claim simply because that claim reaches us on a threshold motion. To the contrary, precedent from this court and others indicates that it is appropriate to test the viability of Vasquez's claim under *Lemon*, even at this early stage. *See*, *e.g.*, *Am. Family Ass'n.*, 277 F.3d at 1121-22; *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1258-60 (10th Cir. 2005); *McGinley v. Houston*, 361 F.3d 1328, 1332-33 (11th Cir. 2004). We do so and con-

clude that Vasquez's Establishment Clause claim is without merit. We therefore affirm the district court's order dismissing the claim with prejudice.

### 1. Secular Purpose

Under the first prong of *Lemon*, we consider whether the challenged government act is grounded in a secular purpose. *See Lemon*, 403 U.S. at 612. While we must "distinguish a sham secular purpose from a sincere one," we should also be "reluctant to attribute unconstitutional motives to the [government]." *Am. Family Ass'n.*, 277 F.3d at 1121; *McCreary County*, 545 U.S. at 864; *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000); *Mueller v. Allen*, 463 U.S. 388, 394-95 (1983).

Vasquez claims that Defendants' purpose in removing the cross from the seal was "anti-Christian" and "motivated by hostility toward Christianity." Defendants counter that their purpose in removing the cross was "to avoid a potential Establishment Clause violation . . . and [to] affirm [the county's] neutrality." The district court accepted Defendants' explanation and concluded that "[i]n the instant case, it is more plausible the County was seeking to avoid the expense associated with defending a threatened lawsuit over an alleged Establishment Clause violation in making its decision to remove the cross from the seal."

**[8]** We agree with the district court. Governmental actions taken to avoid potential Establishment Clause violations have a valid secular purpose under *Lemon*. *See*, *e.g.*, *Vernon*, 27 F.3d at 1397; *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d at 1259-60; *Roberts v. Madigan*, 921 F.2d 1047, 1054 (10th Cir. 1990); *Bishop v. Aronov*, 926 F.2d 1066, 1077-78 (11th Cir. 1991), *cert. denied sub nom.*, *Bishop v. Delchamps*, 505 U.S. 1218 (1992). In this respect, our decision in *Vernon v. City of Los Angeles* controls. In that case, an officer of the Los Angeles Police Department sued the city

after the city launched an investigation into his religious views. Plaintiff claimed the city acted for an improper purpose. We rejected plaintiff's argument after concluding that the city's primary purpose in conducting the investigation was to determine whether plaintiff's on-duty job performance had violated the Establishment Clause. *See Vernon*, 27 F.3d at 1397. We said in *Vernon* that "[i]t is well-established that governmental actions primarily aimed at avoiding violations of the Establishment Clause have a legitimate secular purpose." *Id.* (internal citation omitted). The same is true in Vasquez's case.[8]

**[9]** Because Defendants' removal of the cross from the LA County Seal was motivated by a legitimate secular purpose — namely, the purpose of avoiding a potential Establishment Clause violation — we hold that the district court did not err in concluding that Defendants satisfied the first prong of the *Lemon* test.

### 2. Secular Effect

**[10]** The second prong of *Lemon* bars governmental action that has the "principal or primary effect" of advancing or disapproving of religion. *See Lemon*, 403 U.S. at 612; *Am. Family Ass'n.*, 277 F.3d at 1122. Governmental action has the primary effect of advancing or disapproving of religion if it is "sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices." *Brown v. Woodland Joint Unified Sch. Dist.*, 27 F.3d 1373,

---

[8]Indeed, as *McGinley v. Houston*, 282 F. Supp. 2d 1304 (M.D. Ala. 2003), *aff'd*, 361 F.3d 1328 (11th Cir. 2004), points out, Establishment Clause jurisprudence would be unworkable if it were any other way: "For this court . . . to hold that the removal of . . . objects to cure an Establishment Clause violation would itself violate the Establishment Clause would . . . result in an inability to cure an Establishment Clause violation and thus totally eviscerate the [E]stablishment [C]lause." *Id.* at 1307 (internal citation and quotation marks omitted).

1378 (9th Cir. 1994). We analyze the effect prong of *Lemon* from the point of view of a reasonable observer who is "informed . . . [and] familiar with the history of the government practice at issue." *See id.*

We have noted that "because it is far more typical for an Establishment Clause case to challenge instances in which the government has done something that favors religion or a particular religious group, we have little guidance concerning what constitutes a primary effect of inhibiting religion." *Am. Family Ass'n.*, 277 F.3d at 1122. The most instructive cases in our circuit are *Vernon* and *American Family Association*, which addressed alleged violations of the Establishment Clause in a hostility to religion context.

In *Vernon*, plaintiff, a police officer who identified himself as a member of the Grace Community Church, allegedly consulted with religious elders on matters of police policy, thwarted the progress of gay and female police officers, pressured other officers to attend religious meetings, and refused to arrest anti-abortion demonstrators. *See* 27 F.3d at 1388-89. When the city launched an investigation into his religious beliefs, plaintiff sued, claiming that the city's pursuit of the investigation had the primary effect of inhibiting or disapproving of his religion. *See id.* at 1390. We held that "[n]otwithstanding the fact that one may infer possible city disapproval of [plaintiff's] religious beliefs from the direction of the investigation, this cannot objectively be construed as the primary focus or effect of the investigation." *Id.* at 1398-99. To the contrary, "[t]he primary purpose of the government action was the investigation of any possible impermissible or illegal on-duty conduct of [plaintiff]." *Id.* at 1399. As such, the investigation could not "reasonably be construed to send as its *primary* message the disapproval of [plaintiff's] religious beliefs." *Id.* (emphasis in original).

Similarly, in *American Family Association*, defendants adopted a resolution condemning a series of anti-gay adver-

tisements that plaintiff religious groups had put forth in a local newspaper. *See* 277 F.3d at 1118-20. We held that the resolution, when "read in context as a whole, [was] primarily geared toward promoting equality for gays and discouraging violence against them." *Id.* at 1122. On that basis, we concluded that "a reasonable, objective observer would view the primary effect of [the resolution] as encouraging equal rights for gays and discouraging hate crimes, and any statements from which disapproval can be inferred only incidental and ancillary." *Id.* at 1122-23 (citing *Vernon*, 27 F.3d at 1398-99).

**[11]** In the context of this case, a reasonable observer who is "informed . . . [and] familiar with the history of the government practice at issue" would not view Defendants' removal of the cross from the LA County Seal as an act of hostility towards religion. *See Brown*, 27 F.3d at 1378. To the contrary, Defendants' removal of the cross is more reasonably viewed as an effort to restore their neutrality and to ensure their continued compliance with the Establishment Clause. This is demonstrated by the fact that Defendants removed the cross only after the presence of crosses on other municipal seals had been held to be unconstitutional. *See*, *e.g.*, *Robinson v. City of Edmond*, 68 F.3d 1226, 1232 (10th Cir. 1995); *Harris v. City of Zion*, 927 F.2d 1401, 1413 (7th Cir. 1991); *Friedman v. Bd. of County Comm'rs*, 781 F.2d 777, 778 (10th Cir. 1985); *see also Murray v. City of Austin*, 947 F.2d 147, 163 (5th Cir. 1991) (Goldberg, J., dissenting), *cert. denied*, 505 U.S. 1219 (1992) (noting that there has been "constant . . . judicial disapproval of government use of Christian crosses . . . on municipal seals" and pointing out that "[t]he Supreme Court itself has repeatedly disapproved in dicta the governmental display of crosses"). *But see Murray*, 947 F.2d at 158 (holding that the presence of a cross on the city insignia did not violate the Establishment Clause).

We need not adjudge the constitutionality of the cross on the original county seal for purposes of this case, nor do we discount the possibility that Defendants here may have been

able to distinguish their usage of the cross on the seal to achieve a contrary result. Nevertheless, we believe that a "reasonable observer" familiar with the history and controversy surrounding the use of crosses on municipal seals would not perceive the primary effect of Defendants' action as one of hostility towards religion. Rather, it would be viewed as an effort by Defendants to comply with the Establishment Clause and to avoid unwanted future litigation.

Because a reasonable observer would not have viewed Defendants' removal of the cross from the seal as an act of hostility towards the Christian religion, or towards religion in general, we hold that the district court did not err in concluding that Defendants satisfied the second prong of the *Lemon* test.

### 3. *Excessive Entanglement*

**[12]** The third prong of *Lemon* bars governmental action that fosters "excessive governmental entanglement with religion." *See Lemon,* 403 U.S. at 613. Vasquez argues that Defendants' removal of the cross from the seal caused excessive entanglement because it "tacitly created a hierarchy of religious symbols," resulted in "tremendous public outcry," and brought about great social and political divisiveness. It is true that in prior cases, we have suggested that one of the factors we examine in determining whether excessive entanglement has occurred is whether the challenged governmental action caused citizens to divide along political lines. *See Vernon*, 27 F.3d at 1401; *Cammack v. Waihee*, 932 F.2d 765, 781 (9th Cir. 1991), *cert. denied*, 505 U.S. 1219 (1992). We have consistently held, however, that political divisiveness is not an "*independent ground* for holding a government practice unconstitutional." *See*, *e.g.*, *Brown*, 27 F.3d at 1383 (emphasis added); *Am. Family Ass'n.*, 277 F.3d at 1123; *Cammack*, 932 F.2d at 781. In that regard, our decision in *American Family Association* is dispositive. In that case, we rejected plaintiffs' argument that excessive entanglement resulted solely from

governmental action that "encouraged political divisiveness along religious lines." *Id.* at 1123. In so doing, we noted that if "[political divisiveness] were enough to create an Establishment Clause violation on entanglement grounds, government bodies would be at risk any time they took an action that affected potentially religious issues." *Id.* Because Vasquez did not allege anything other than social and political divisiveness, his entanglement argument must necessarily fail.

**[13]** Based on our *de novo* review of the allegations set forth in Vasquez's complaint, we conclude that the district court did not err in dismissing Vasquez's Establishment Clause challenge pursuant to Rule 12(b)(6). Accordingly, we affirm the district court's order of dismissal.

## D. *Dismissal Without Leave to Amend*

Lastly, we consider whether the district court appropriately dismissed Vasquez's complaint without leave to amend. Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment. *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002).

**[14]** In light of our prior discussion, we are satisfied that Vasquez's complaint falls short of stating a claim under the Establishment Clause in ways that could not be overcome by any amendment. Granting Vasquez leave to amend would have been futile, and we hold that the district court did not err in preventing such futility. *See id.* at 824 (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend).[9]

---

[9]Because Vasquez failed to state a claim under the Establishment Clause, we also deny his request for leave to amend his complaint to add a claim for nominal damages. *See generally Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (holding that nominal damages are appropriate for deprivations of constitutional rights that do not result in actual injury).

## III. CONCLUSION

In sum, although we conclude that Vasquez's Establishment Clause claim should not have been dismissed for lack of standing or for mootness, we hold that the district court did not err in dismissing Vasquez's claim on the merits. Accordingly, we affirm the order of the district court dismissing Vasquez's Establishment Clause claim with prejudice.

**AFFIRMED.**